**UNITED STATES of America, Appellant,**

v.

**Guy Joseph DUCHI, Appellee.**

**No. 91–1251.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1991.

Decided Aug. 23, 1991.

Rehearing Denied Oct. 7, 1991.

**392**

had been given by Duchi in a separate trial of a co-defendant. We reverse this ruling on the ground that testimony was not coerced and its use at the retrial would not violate Duchi's constitutional rights.

The detailed facts are irrelevant to the decision on the first issue. Following a package that was being delivered by United Parcel Service, the police decided to enter Duchi's home without a warrant due to what they perceived to be exigent circumstances. They seized the package which contained cocaine, and large amounts of cash, various items of drug paraphernalia, a weapon, and additional quantities of drugs. This Court held that exigent circumstances did not justify the warrantless entry of the house and that the evidence seized should have been suppressed.

Douglas R. Peterson, Minneapolis, Minn., for appellant.

Bruce H. Hanley, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, RONEY *, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RONEY, Senior Circuit Judge:

The Government appeals two rulings made by the district court preparatory to the retrial of defendant Guy Joseph Duchi after this Court reversed his conviction because illegally seized evidence was admitted at his first trial. *United States v. Duchi*, 906 F.2d 1278 (8th Cir.1990). *First,* the Court ruled that the Government could not argue a different ground for the introduction of the evidence that this Court had held to be illegally obtained. We affirm this ruling on the ground that the Government waived all arguments for the introduction of the evidence not previously made on the appeal to this Court. *Second,* the Court ruled that the Government could not introduce incriminating testimony that

*Search and Seizure*

■ Prior to a contemplated second trial, the Government requested the district court to revisit the search issue under the inevitable discovery doctrine, which had neither been raised nor addressed in the first case. The Government reasons that had the officers not entered the house under a mistaken belief that the warrantless entry was justified by exigent circumstances, then they would have obtained a warrant and discovered precisely the same evidence at a later time. The Government may not advance during a second trial previously unasserted grounds for the admissability of evidence seized in a warrantless search which an appeals court has concluded should have been suppressed on the basis of arguments made at the first trial. Courts of appeal will not reconsider previously decided issues unless substantially different evidence is subsequently discovered or the court determines that the prior decision works a manifest injustice on one of the parties. *Little Earth of the United Tribes v. U.S. Dep't of Housing & Urban Development*, 807 F.2d 1433 (8th Cir.1986).

---

* The HONORABLE PAUL H. RONEY, Senior Circuit Judge, United States Court of Appeals for

the Eleventh Circuit, sitting by designation.

The "issue" addressed previously is not the particular theory that would support the admission of evidence, but the broader question concerning the admissibility itself. In this case, the issue addressed and decided in *Duchi I* was whether the search was constitutional, not simply whether exigent circumstances justified the search. If alternative grounds for admission existed, then the Government should have presented those theories in the prior case.

In *Duchi I,* this Court made the scope of its holding clear. "The Government is, of course, free to retry the appellant. It must, however, prove the case against Duchi without the benefit of the evidence gained from unconstitutionally entering his home." 906 F.2d at 1285. That holding establishes the law of the case in regard to the admissibility of evidence, and the district court correctly concluded that it did not have authority to revisit the constitutionality of the search and seizure.

### Duchi's Testimony in Companion's Trial

When the police entered the home, they found both Duchi and his companion, Constance Conrad. The package involved had been addressed to C. Conrad. Both Duchi and Conrad were indicted for various narcotics and firearms offenses. They were initially scheduled to be tried jointly. The district court agreed to sever the cases when Duchi made an affidavit which stated, "If my codefendant, Constance Conrad, has a separate trial after my trial, I definitely will testify at her trial in an exculpatory manner."

Conrad was brought to trial shortly after the district court found Duchi guilty of the six counts associated with the delivery of the UPS package. As he had promised, he was called without subpoena by counsel for Conrad and testified on Conrad's behalf. The Government wants to introduce that testimony in Duchi's retrial. The district court held the testimony was inadmissible because it had been compelled in violation of Duchi's Fifth Amendment rights due to certain instructions given to the defendant by the court. We have carefully examined the record in detail and conclude that Du-

chi's testimony was indeed voluntary and can be used against him at a second trial.

Initially, counsel's questions of Duchi at Conrad's trial focused on the circumstances of the couple's meeting and the nature of their relationship. Duchi testified that the couple had lived together for several years but that they had hardly spoken for several months prior to the arrest and that he was often abusive with Conrad and expected her to do precisely what he instructed or suffer the consequences.

Counsel then began to ask Duchi about a trip to California, the trip during which Duchi allegedly set up the delivery of cocaine. After Duchi provided several evasive answers to questions concerning the package, counsel approached the issue more directly. "Isn't it true that you made arrangements with someone to ship a package back from California?" Duchi responded by saying, "I take the Fifth Amendment on that."

After counsel requested a sidebar and the jury was dismissed, the lawyers began discussing the nature of Duchi's Fifth Amendment privilege. Conrad's counsel told the court that his understanding was that the Duchi no longer had any Fifth Amendment rights as to those matters involved in the offenses for which he had been convicted. The Government's attorney and Duchi's attorney both agreed. The court, however, asked Duchi to step down and confer with his attorney about the scope of the privilege. While Duchi was conferring separately with his attorney, the Court asked the Assistant United States Attorney quizzically, "My understanding of the law is the Fifth Amendment disappeared after conviction?" The Government attorney agreed.

Duchi and his attorney were acutely aware of the problems posed by his testimony. When they returned from their discussion, Duchi's counsel informed the court that he and his client were concerned that the testimony Duchi was about to give might be used against him in a second trial if they were successful on appeal. The court stated, "I can't address that concern. My understanding of the Fifth Amendment

is after the conviction he no longer has a Fifth Amendment right." Duchi's counsel again agreed but suggested that immunity might be granted to Duchi. At this point, Duchi's attorney and Duchi again stepped to the side and discussed how they would proceed.

When they returned the court for the first time addressed Duchi directly. The judge stated:

> THE COURT: It has to be [your] understanding if you are going to be up here and testify, and say that was your cocaine, you are going to have to tell everything you know about it, and if you don't I will order you to say that.

After some additional questions from Duchi the court clarified its position.

> THE COURT: *Understand me, I am not telling you you have to testify, Mr. Duchi. If you cho[o]se not to testify you don't have to say another word except about your relationship with Ms. Conrad as you talked to it up to this point in time.* If you start talking about that cocaine and you indicate that it was yours and not her's and she doesn't know anything about it then the prosecutor has a right to ask you everything else about that cocaine. You can't pick and cho[o]se what you want to tell us about it.

Duchi's attorney then informed the court that Duchi intended to testify.

■ Our reading of the record convinces us that Duchi was told these things as to his testifying at Conrad's trial. *First,* he was told that he did not have to testify at all. He was a voluntary witness, not under subpoena, and nothing on the record suggests that he was told that he had to testify if he did not want to. *Second,* as to any testimony about the cocaine for which he was convicted, he was told two things. First, he was told that if he started to testify about the cocaine, he would have to answer all questions about the transaction. This advice was undoubtedly correct. *See, e.g., Brown v. United States,* 356 U.S. 148, 156, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958). Second, he apparently was told that he had no Fifth Amendment right to refuse to testify about the cocaine for which he had

been convicted. The court, the Government attorney, the defense attorney, and Duchi's attorney all seemed to agree that he had no Fifth Amendment right not to testify about that cocaine transaction. Although the court did not tell this to the defendant directly, it can be assumed that his attorney so advised him. There is a split of authority on this issue. The better rule, however, appears to be that the Fifth Amendment right not to testify concerning transactions for which one has been convicted continues until the time for appeal has expired or until the conviction has been affirmed on appeal. *See, e.g., Frank v. United States,* 347 F.2d 486, 441 (D.C.Cir. 1965) ("Government may not convict a person and then, pending his appeal, compel him to give self-accusatory testimony relating to the matters involved in the conviction"); *Mills v. United States,* 281 F.2d 736, 741 (4th Cir.1960) (witness may claim privilege as long as time for appeal from conviction has not expired). *But see In re Bando,* 20 F.R.D. 610, 615 (S.D.N.Y.1957) (Fifth Amendment privilege is not maintained after conviction merely because a petition for writ of certiorari has been filed with the Supreme Court). *See also* 21A Am.Jur.2d *Criminal Law* §§ 711, 943 (1981). Third, Duchi was told he had a Fifth Amendment right to refuse to testify about any transactions for which he had not been convicted. This advice was correct.

■ Thus it appears the district court correctly informed *the witness* in direct communication about the proper scope of his Fifth Amendment rights. Although the court mistakenly stated that no privilege exists after conviction, it made these statements during a colloquy with the lawyers. Prior to its direct statements to Duchi, the court made no ruling or decision and gave Duchi no definitive statement concerning the nature of his rights. The court's statements to Duchi himself, therefore, did not compel Duchi's testimony. The court emphasized that Duchi could cut off questioning about the cocaine, where it was, and did not "have to say another word." Only if Duchi decided to testify about the cocaine delivery would the privilege become inapplicable.

The record thus reveals this situation. Duchi was probably advised by counsel that he had no Fifth Amendment right to refuse to testify about the cocaine for which he was convicted. The witness was advised by the court, however, that he did not have to testify if he did not want to. While a close question it appears to us that the testimony then given by Duchi was not compelled, was voluntary, and its introduction in a subsequent trial would not violate Fifth Amendment principles.

Duchi has suggested another basis for upholding the district court's decision that is closely akin to the compelled testimony argument. He maintains that he gave testimony at Conrad's trial as a result of the illegal search and seizure, so the testimony should be suppressed as the "fruit of the poisonous tree." Conrad had made a motion to suppress the evidence, as had Duchi. As in the Duchi trial, suppression was denied, albeit erroneously. Had the district court properly suppressed the evidence prior to Conrad's trial, Duchi argues, then charges would never have been brought against Conrad and he would not have been forced to testify on her behalf.

Accepting for the moment the argument that charges would never have been raised against Conrad had the evidence been suppressed, a proposition that is not without doubt, it is clear that Duchi's testimony is not sufficiently related to the initial illegality to warrant imposition of the exclusionary rule. In *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), the Supreme Court expanded on a theme which it first intimated in *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). The Court in both cases emphasized that evidence, whether testimonial or tangible, is the fruit of the poisonous tree and thus suppressible only if the authorities have obtained the evidence through "exploitation" of the initial illegality. *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). In *Harris*, the majority determined that a statement obtained at the police station after an unconstitutional warrantless arrest in the home, *see Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), was not related to the underlying illegality and should not

have been suppressed. The Court held that *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), was distinguishable because in that case the incriminating statements were taken after an arrest without probable cause. As a result, the defendant was not properly in custody and therefore any statements he made while illegally detained were viewed as derivative of the illegality. In contrast, the defendant in *Harris* did not make his statements during the course of the illegal warrantless entry and was not being held illegally at the time he made the damaging statements to the police. Accordingly, the majority concluded that the statements bore an insufficient relation to the underlying infraction to warrant exclusion.

*Harris* demonstrates that for testimony or evidence to be considered the fruit of an illegal search, it must be directly or indirectly attributable to the constitutional violation. In *Harris*, even though the illegal entry arrest was a "but for" cause of the later statements in that without the illegal arrest no statements would have been made, it was not the proximate cause of the statements because the statements were not obtained during the unconstitutional entry into the home.

Likewise, in this case, Duchi's statements were not the "fruit" of the earlier illegal search. The Government did not exploit its unconstitutional conduct to obtain Duchi's statements, as that term is used in *Wong Sun*. Instead, Duchi made a conscious and voluntary choice to aid his girlfriend and co-defendant by testifying in her behalf. Nothing about the illegal search led the Government to this testimony and the Government did not use an advantage gained by its illegal activity to obtain Duchi's statements.

Defendant maintains that this case is controlled by the Supreme Court's holding in *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). In *Harrison*, the defendant had objected to the admission of several confessions which he claimed had been coerced. The trial court denied the motions and the defendant took the stand in an effort to clarify the confessions. On appeal, a court determined that the confessions had been involuntarily made. The majority in the Su-

**396**

preme Court held that the defendant's testimony from the first trial could not be used in a retrial because it was the fruit of the illegal confessions.

This case, however, is readily distinguishable from *Harrison*. Duchi took the stand not on his own behalf, but on behalf of another individual. The Court in *Harrison* specifically confined its holding to the admission of the testimony given by the defendant during the prosecution of his case. 392 U.S. at 223 n. 9, 88 S.Ct. at 2010 n. 9. In that case, the Court found that the defendant was literally compelled to respond to the introduction of the involuntary confessions. The testimony, therefore, bore a direct, causal connection to the constitutional violation. No such direct link is created when the illegally obtained evidence is introduced in the trial of another. Duchi, with the advice of counsel, made a voluntary choice to assist his girlfriend. As a result, the testimony he gave during that trial was not compelled by the introduction of evidence from the initial unconstitutional search and need not be suppressed on retrial.

The Second Circuit came to a similar conclusion in *United States v. Mullens*, 536 F.2d 997 (2d Cir.1976). After the police seized a large number of counterfeit bills from the defendant's parents' home, the defendant provided a statement to police in order to exculpate his mother and father. On direct appeal, the court held that the counterfeit money had been illegally seized. During the retrial, the defendant objected to the prosecution's attempt to introduce the admissions made to police on the grounds that the statements were the fruit of the illegal search. The Second Circuit held that the evidence could be admitted because the choice concerning whether to make a statement to benefit his parents, while difficult, was not compelled by the illegal search.

In any event, applying the Fourth Amendment exclusionary rule here would seem to have no purpose. The Supreme Court has repeatedly stated that courts should consider the potential deterrent effect on police in determining the point at which the taint from the illegality has become too attenuated to warrant suppression. *United States v. Leon*, 468 U.S. 897, 911, 104 S.Ct. 3405, 3414, 82 L.Ed.2d 677

(1984). The exclusionary rule, as a judicial creation, can only be justified where the benefits of suppressing the information outweigh the costs. If exclusion will result in no appreciable deterrent effect on police then the evidence in question is too far removed from the original constitutional violation to constitute a fruit of that transgression. Under the circumstances of this case, no deterrent effect would be served by suppressing Duchi's testimony. Even the most prescient of officers could not have imagined that their illegal search would result in this testimony. Use of the exclusionary rule in this context would be inappropriate.

AFFIRMED IN PART AND REVERSED IN PART.