**STATE of Minnesota, ex rel. Randy MORROW, Appellant,**

v.

**Gothriel LaFLEUR, Commissioner of Corrections, Respondent.**

No. C7–98–323.

Court of Appeals of Minnesota.

March 24, 1998.

Bradford Colbert, Legal Assistance of Minnesota Prisoners, St. Paul, for appellant.

Hubert H. Humphrey, III, Attorney General, Sara DeSanto, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by TOUSSAINT, C.J., and RANDALL and SHUMAKER, JJ.

## OPINION

TOUSSAINT, Chief Judge.

This is an appeal from an order denying appellant Randy Morrow's petition for a writ of habeas corpus challenging a disciplinary sanction imposed on him by respondent that extends his supervised release date by 90 days. We reverse.

## FACTS

Morrow was convicted in June 1996 and sentenced to 36 months in prison for fourth-degree criminal sexual conduct. Morrow also received 10 years of extended supervised release time to be served after his release from prison. The complaint alleged that Morrow had engaged in sexual contact with a 13–year–old boy by rubbing his buttocks. Morrow had a prior second-degree criminal sexual conduct conviction from 1991.

Prison officials conducted a sex offender assessment of Morrow upon his admission into prison, and he was told he would have to complete a long-term intensive sex offender treatment program while in prison, and that if he did not do so he could receive Disciplinary Confinement Time Added (DCTA), which would extend his term of imprisonment.

Morrow met with MCF–Lino Lakes treatment program staff members on April 23, 1997, in order "to determine whether Morrow was amenable to treatment and should begin the first phase of the program." According to a memo generated the same day by the case manager, Morrow admitted most of the behavior alleged in the complaint, including kissing the 13–year–old boy on the lips and sleeping in the same bed with him, but denied fondling the boy's buttocks, the element of sexual contact. Morrow declined to admit that element, or to further discuss the offense, because he was appealing his conviction. The treatment staff therefore determined he was not amenable to treatment and terminated him from the program. As a result, he was charged with a violation of Disciplinary Rule 51 and sanctioned with 90 days of DCTA. The 90 days of DCTA extended Morrow's supervised release date from January 22, 1998, to April 22, 1998. Morrow filed a petition for habeas corpus challenging the DCTA sanction. The trial court denied the petition.

## ISSUE

Did the disciplinary sanction imposed violate due process or appellant's Fifth Amendment privilege against self-incrimination?

## ANALYSIS

On appeal from the denial of a petition for habeas corpus, the trial court's findings are entitled to great weight and will be sustained if reasonably supported by the evidence. *State ex rel. Holecek v. Ross,* 472 N.W.2d 185, 186 (Minn.App.1991). Questions of law, however, are subject to de novo review. *State ex rel. McMaster v. Benson,* 495 N.W.2d 613, 614 (Minn.App.1993), *review denied* (Minn. Mar. 11, 1993).

In the trial court, Morrow relied primarily on a claimed due process violation. He cited a statement made by the treatment program director, who stated after Morrow had appealed his termination that Morrow had been terminated because he was "legally appealing [his] current conviction." The director later filed an affidavit in response to the habeas petition, explaining that the reason was instead Morrow's refusal to discuss the offense. Morrow then raised a Fifth Amendment issue at the hearing on the petition. Morrow has not waived his claim that his Fifth Amendment privilege was violated.

The Eighth Circuit Court of Appeals has held that the "better rule" is that the Fifth Amendment privilege against compelled self-incrimination "continues until the time for appeal has expired or until the conviction has been affirmed on appeal." *United States v. Duchi,* 944 F.2d 391, 394 (8th Cir.1991). This court has also implied that the Fifth

Amendment privilege continues until the direct appeal of the conviction has concluded. *See Taylor v. Lieffort*, 568 N.W.2d 456, 458 (Minn.App.1997) (no Fifth Amendment privilege where inmate has exhausted the appeals of his conviction).

■ This court held in *Taylor* that a requirement of admission of guilt before an inmate could be admitted into a sex offender treatment program did not violate the inmate's privilege against self-incrimination. *Taylor*, 568 N.W.2d at 458. However, Taylor was based on three factors (1) the requirement was part of a rehabilitative program; (2) the prison could refuse to participate; and (3) Taylor had already been convicted (and exhausted his appeals). *Id.* Moreover, this court noted that admission of guilt was not an absolute requirement and that Taylor acknowledged that he had refused to participate in the program. *Id.* However, this case is distinguishable on several grounds.

First, Morrow had not exhausted his appeal from conviction at the time he was terminated from the treatment program.[1] Second, it appears that admission of guilt was an absolute requirement of admission into the treatment program, and that Morrow did not refuse to participate in the program but only limited his admission of guilt.

Morrow's termination from the treatment program based on his refusal to discuss one aspect of his behavior reflects a rigid approach making treatment in effect a punishment for an exercise of one's rights rather than an opportunity for rehabilitation. Morrow admitted kissing the lips and rubbing the back of the 13-year-old boy, as well as sleeping on the same bed. These admissions provided ample topics for therapeutic discussion. The requirement that Morrow not only admit inappropriate behavior but also admit all elements of the criminal offense is "artificial, * * * unrealistic * * *, and * * * fatally counter productive," *In re Welfare of J.A.F.*, No. C3-89-1199, 1990 WL 10676 (Minn.App.1990) (Randall, J., concurring), *review denied* (Minn. Apr. 13, 1990).

Disciplinary Rule 51 requires an inmate to "follow and complete" a mandated treatment program, including demonstrating a "willingness to enter and participate" in the program. In this case, unlike *Taylor*, we have no evidence that Morrow was unwilling to participate in the treatment program. He merely declined to make a legal admission to the elements of fourth-degree criminal sexual conduct. Morrow's denial of sexual contact did not constitute any "unwillingness to discuss the offense" that would meaningfully hinder treatment. The only logical explanation for the termination is that the treatment staff punished Morrow for either his formal denial of the offense, or his pending appeal, or both.

The supreme court has held that, while a court could not require parents to incriminate themselves in a child protection case in order to avoid termination of parental rights, it could require the parents to undergo treatment for which acceptance of guilt was a precondition of successful completion. *In re Welfare of J.G.W.*, 433 N.W.2d 885, 886 (Minn.1989). Here, Morrow is being required to admit guilt as a precondition of admittance into treatment. Moreover, he is being punished immediately and directly for his failure to (fully) admit guilt, not merely having that failure considered as one factor in the ultimate decision. We conclude that this violates due process and Morrow's Fifth Amendment privilege. Accordingly, we reverse the denial of the petition for habeas corpus and direct respondent to recalculate and to comply with Morrow's supervised release date in accordance with this opinion.

### DECISION

The disciplinary sanction violated appellant's due process and Fifth Amendment rights. Appellant is entitled to a writ of habeas corpus requiring respondent to recalculate his supervised release date and release him accordingly.

**Reversed.**

---

1. This court's opinion affirming Morrow's conviction on direct appeal was not issued until a month-and-a-half after Morrow declined to discuss the offense. *State v. Morrow*, No. C4-96-1702, 1997 WL 309453 (Minn.App. June 10, 1997), *review denied* (Minn. Oct. 14, 1997).