Frank Edward JOHNSON,
petitioner, Appellant,

v.

Joan FABIAN, Commissioner
of Corrections, et al.,
Respondents.

No. A05–2498.

Court of Appeals of Minnesota.

April 4, 2006.

See also 679 N.W.2d 378.

Frank Edward Johnson, Moose Lake, MN, pro se appellant.

Brent D. Wartner, Associate Legal Counsel, St. Paul, MN, for respondents.

Considered and decided by TOUSSAINT, Chief Judge; WRIGHT, Judge; and WORKE, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This is an expedited appeal from an order denying appellant Frank Edward Johnson's habeas petition challenging two decisions of respondents, officers and employees of the Department of Corrections (DOC), that extended appellant's incarceration based on his refusal to make admissions as part of his mandated treatment. The district court concluded that neither decision violated appellant's Fifth Amendment privilege. Because we conclude that respondents did not violate appellant's Fifth Amendment privilege in sanctioning him with respect to the chemical-dependency treatment program but did violate his privilege with respect to the sex-offender treatment program, we affirm in part, reverse in part, and remand to respondents for recalculation of appellant's supervised-release date.

## FACTS

Appellant was sentenced in February 2003 to 58 months in prison for first-degree burglary and third-degree criminal sexual conduct. *See State v. Johnson,* 679 N.W.2d 378 (Minn.App.2004), *review denied* (Minn. Aug. 17, 2004). He filed his direct appeal on May 7, 2003. By then, appellant's Program Review Team (PRT) in prison had recommended that he complete a chemical dependency treatment program, TRIAD, and a sex-offender treatment program (SOTP), while in prison. Appellant resisted participation in both programs, largely because he was appealing his conviction and did not want to admit his offenses during treatment. The DOC imposed sanctions of 90 additional days of incarceration for appellant's

refusal of the TRIAD program and 45 additional days for his refusal of SOTP.

After appellant's chemical-dependency assessment, the prison staff recommended that he be required to enter and complete TRIAD at the prison. Appellant resisted entry into TRIAD because he did not feel he had a drug problem or needed inpatient treatment and because he was appealing his conviction. As a result, appellant was assigned 90 days of additional incarceration for this refusal of treatment, which was a disciplinary rule violation.

Similarly, after appellant's interview with the SOTP team he was not accepted for admission because he expressed a lack of interest, indicating he was appealing his conviction and did not want to admit the offense. After a hearing, the hearing officer found there was "some evidence" to support a finding of guilty of a disciplinary violation. The officer also found that an "incident report of [a SOTP staff member] in addition to [appellant]'s testimony, clearly establishes that [appellant] did not accept placement into the treatment unit."

Appellant filed a petition for a writ of habeas corpus. The district court denied the petition, finding that the TRIAD program did not require appellant to answer incriminating questions and that the choice presented to him of participating in SOTP or delaying his supervised release did not rise to the level of compulsion under the Fifth Amendment. This appeal followed.

## ISSUES

I. Did the disciplinary sanctions imposed by respondents violate appellant's Fifth Amendment privilege against self-incrimination?

II. Did the hearing officer erroneously apply a "some evidence" standard of proof?

## ANALYSIS

This court gives great weight to the district court's findings in considering a petition for habeas corpus and will uphold those findings if they are reasonably supported by the evidence. *Northwest v. LaFleur*, 583 N.W.2d 589, 591 (Minn.App. 1998), *review denied* (Minn. Nov. 17, 1998); *State ex rel. Holecek v. Ross*, 472 N.W.2d 185, 186 (Minn.App.1991). The court, however, reviews questions of law de novo. *State ex rel. McMaster v. Benson*, 495 N.W.2d 613, 614 (Minn.App.1993), *review denied* (Minn. Mar. 11, 1993).

### I.

Appellant argues that respondents violated his Fifth Amendment privilege against self-incrimination by disciplining him for refusing to participate in treatment programs that would require him to admit his offense while he was appealing his conviction.[1] We address first the Fifth Amendment claim as it relates to the TRIAD chemical-dependency program.

The district court's finding that the TRIAD program did not require appellant to incriminate himself is amply supported by the record. James Kaul, the director of the program, submitted an affidavit stating that TRIAD did not mandate that an inmate discuss an offense currently on appeal, and that, if the offender refused to talk about such an offense, "staff accept

---

1. The Eighth Circuit has held that the "better rule" is that the Fifth Amendment privilege against compelled self-incrimination continues while the conviction is being appealed. *United States v. Duchi*, 944 F.2d 391, 394 (8th Cir.1991); *cf. Taylor v. Lieffort*, 568 N.W.2d 456, 458 (Minn.App.1997) (holding there was no Fifth Amendment privilege when inmate had exhausted appeal of conviction). Respondents do not claim appellant's privilege expired when he was convicted.

that response and continue to treat the offender." TRIAD, according to Kaul, does not terminate an offender for refusing to discuss his offense(s).

Given these facts, the TRIAD program did not compel appellant to admit the offenses he was appealing. In addition, appellant gave other reasons for refusing to participate in the TRIAD program. Thus, there is no factual basis for appellant's Fifth Amendment argument as to the 90-day sanction for refusing to participate in the TRIAD program.

■ The facts are different as to the SOTP program, as the state concedes. A SOTP staff member testified that an offender is required to admit his offense and discuss its specifics before being admitted to treatment. The staff member also testified that a refusal to discuss the offense was considered a disciplinary violation.

The district court found that the choice presented to appellant to participate in treatment or face extension of prison time did not rise to the level of compulsion. *See State ex rel. Morrow v. LaFleur,* 590 N.W.2d 787, 792 (Minn.1999) (holding that inmate's "choice between treatment and confinement for a larger portion of his sentence" did not rise to the level of compulsion).

The supreme court in *Morrow* held that a disciplinary sanction that delayed the inmate's supervised release date by 90 days did not constitute "compulsion" for purposes of the Fifth Amendment privilege. *Id.* at 791–92. The court concluded "that the loss of an opportunity for an earlier supervised release date does not constitute a substantial penalty for purposes of the Fifth Amendment." *Id.* at 793.

We conclude that *Morrow's* holding does not reflect current Fifth Amendment law, as set forth in *McKune v. Lile,* 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002).

In *McKune,* a plurality (four justices) of the Court concluded that a mandated prison sex-offender treatment program that required the prisoner to admit his offense did not "compel" the prisoner's admission within the meaning of the Fifth Amendment. *Id.* at 41–44, 122 S.Ct. at 2029–30. The plurality noted that the sanctions imposed on those who did not participate in treatment did not extend the prisoner's term of incarceration or affect his eligibility for good-time credits or parole. *Id.* at 38, 122 S.Ct. at 2027. Justice O'Connor concurred, noting that a sanction involving longer incarceration would be a penalty "far greater than those [penalties] we have already held to constitute unconstitutional compulsion in the [civil] penalty cases." *Id.* at 52, 122 S.Ct. at 2034–35.

As a number of federal court opinions have noted, Justice O'Connor's concurrence, which advances the narrowest rationale in support of the result, must be treated as the holding in *McKune.* *See Ainsworth v. Stanley,* 317 F.3d 1, 4 (1st Cir.2002); *Searcy v. Simmons,* 299 F.3d 1220, 1225 (10th Cir.2002); *Donhauser v. Goord,* 314 F.Supp.2d 119, 126 (D.N.Y. 2004). Although Justice O'Connor's concurrence does not set out a standard for determining what is "compulsion" for Fifth Amendment purposes in the prison context, it does indicate that "longer incarceration" would easily meet this standard. 536 U.S. at 52, 122 S.Ct. at 2034.

■ The sanction imposed on appellant, like the penalty imposed in *Morrow,* extended the inmate's incarceration. We believe that, under Justice O'Connor's opinion in *McKune,* such a sanction constitutes "compulsion."

The federal cases cited by the state, although agreeing that Justice O'Connor's concurrence is the holding of *McKune,* do not agree on what constitutes "longer incarceration." *Donhauser,* the only case

finding a Fifth Amendment violation, holds that the potential loss of good-time credits, which *may* increase the length of incarceration, meets Justice O'Connor's test of "compulsion." 314 F.Supp.2d at 127. But *Ainsworth* finds no "clear guideposts" in Justice O'Connor's opinion, and therefore applies the First Circuit's own prior test to find that a reduced opportunity for parole does not constitute "compulsion." 317 F.3d at 5. *Searcy* holds that the loss of an opportunity to earn future good-time credits does not constitute compulsion. 299 F.3d at 1226–27.

◼ These holdings may reflect the differences in calculating prison sentence durations and in determining eligibility for parole or other release in various jurisdictions. In Minnesota, the period of supervised release is "equal to the period of good time the inmate has earned." Minn. Stat. § 244.05, subd. 1 (2004). The sentencing judge is directed to pronounce at sentencing the "amount of time the defendant will serve on supervised release," assuming no disciplinary confinement time is added. Minn.Stat. § 244.101, subd. 2 (2004). The time to be served on supervised release may be altered "for in-prison disciplinary offenses." *State v. Schwartz*, 628 N.W.2d 134, 139 (Minn.2001) (citation omitted).

The supreme court in *Morrow* held that "[r]educing the part of the ... sentence that is to be spent on supervised release is not a penalty" sufficient to constitute "compulsion." 590 N.W.2d at 793. The court noted that an inmate does not have a right to a certain minimum duration of supervised release. *Id.* But the Supreme Court's holding in *McKune* does not appear to turn on whether the release date extended by the government penalty is a matter of right. Justice O'Connor's opinion, although it does not define the term "longer incarceration," cites a case involv-

ing plea bargaining, which plainly involves sentence durations that are a matter for negotiation, not a matter of right. *McKune*, 536 U.S. at 52, 122 S.Ct. at 2034; *see Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (holding that plea bargaining, although impacting the degree of punishment, is unlikely to drive a defendant "to false self-condemnation"). And the plurality opinion is careful to note that the prison sanction imposed did not "affect [the inmate's] eligibility for good-time credits or parole." *McKune*, 536 U.S. at 38, 122 S.Ct. at 2027. The sanction imposed here directly affected appellant's eligibility for supervised release, the current term for "parole."

We conclude that *McKune* effectively overrules the holding in *Morrow* that the extension of an inmate's incarceration by delaying his supervised release date does not constitute "compulsion." The *Morrow* court offered other reasons for rejecting the inmate's Fifth Amendment claim. Respondents do not offer those reasons as independent grounds for affirming in this case, but we have examined them and conclude they do not provide a basis for affirming.

*Morrow* notes that an inmate could be required to respond to "relevant official inquiries." 590 N.W.2d at 794. The Supreme Court in *McKune*, however, did not hold that questions posed to an inmate about his criminal offense(s) as part of a treatment program are merely "relevant official inquiries." Both the plurality opinion and Justice O'Connor's concurrence appear to assume that, if the penalty imposed by prison officials rose to the level of "compulsion," there would be a Fifth Amendment violation in posing such questions as a part of treatment.

*Morrow* also notes that an inmate subject to a mandated treatment program has

a choice between fully participating in the program by admitting his offense, and facing disciplinary action. 590 N.W.2d at 792. But the fact that the inmate had a choice was not offered as an independent basis for finding no Fifth Amendment violation. Rather, the inmate's choice was discussed only in relation to the penalty attached to that choice, and to the court's determination that that penalty, "confinement for a larger portion of [the] sentence," did not constitute compulsion. *Id.* Similarly, *McKune* acknowledged the inmate's choice, while noting that "[t]he cost to [the inmate] of exercising his Fifth Amendment privilege" did not rise to the level of compulsion. 536 U.S. at 42, 122 S.Ct. at 2029. Therefore, we conclude that *Morrow* does not require us to hold that, because appellant had a choice whether to fully participate in treatment, there is no Fifth Amendment violation, even if the sanction imposed on appellant for refusing treatment constitutes "compulsion."

## II.

 Appellant also argues that the hearing officer used the "some evidence" standard of proof disapproved in *Carrillo v. Fabian,* 701 N.W.2d 763 (Minn.2005). *Carrillo* held that the DOC must use a preponderance-of-the evidence standard, rather than the "some evidence" standard, in disciplinary proceedings. *Id.* at 777.

This argument is directed only at the 45–day sanction for failure to enter SOTP. The hearing officer's report in that case states that "there is some evidence to support a finding of guilty" of failing or refusing treatment. But the report goes on to state that the "incident report of [a SOTP staff member] in addition to [appellant's] testimony, *clearly establishes* that [appellant] did not accept placement into the treatment unit." (Emphasis added.)

Thus, the hearing officer ultimately did not apply a "some evidence" standard of proof.

## DECISION

The disciplinary sanction imposed for failing or refusing sex-offender treatment violated appellant's Fifth Amendment privilege against self-incrimination. The sanction imposed for failing or refusing chemical-dependency treatment did not violate the privilege. The matter is remanded to the Department of Corrections for recalculation of appellant's supervised release date.

**Affirmed in part, reversed in part, and remanded.**