**STATE of Minnesota, ex rel. John William HENDERSON, petitioner, Appellant,**

v.

**Joan FABIAN, Commissioner of Minnesota Department of Corrections, Respondent.**

No. A06–439.

Court of Appeals of Minnesota.

June 6, 2006.

Bradford Colbert, Charity Delich (certified student attorney), St. Paul, MN, for appellant.

Eric L. Lipman, St. Paul, MN, for respondent.

Considered and decided by PETERSON, Presiding Judge; HALBROOKS, Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.

This appeal is from an order denying appellant John Henderson's petition for a writ of habeas corpus, which challenged the respondent Commissioner of Corrections' decision extending his incarceration based on his refusal to participate in a mandated, in-prison sex-offender treatment program. Because we conclude that appellant no longer had a Fifth Amendment privilege threatened by the participation required in the program, we affirm.

## FACTS

Appellant was sentenced in February 2002 to 91 months in prison for first-degree criminal-sexual conduct. Appellant's conviction was affirmed on direct appeal on May 6, 2003. *State v. Henderson*, No. C5-02-780 (Minn.App. May 6, 2003), *review denied* (Minn. July 15, 2003). On November 5, 2003, almost four months after the supreme court denied further review, appellant was to be evaluated for participation in the prison's required sex-offender treatment program (SOTP). Appellant refused to enter the program.

Appellant later filed a notice indicating that he was claiming a Fifth Amendment privilege not to discuss his offense in the SOTP. It is not clear that he gave this reason on November 5. The Department of Corrections (DOC) scheduled a disciplinary hearing. After appellant received one continuance of the hearing in order to prepare his defense, he pleaded guilty "with an explanation." The explanation apparently was that appellant had been diagnosed with cancer and was not ready to proceed. The DOC imposed a sanction of 45 additional days of incarceration for appellant's refusal to participate in the SOTP. In December 2003, the DOC denied appellant's administrative appeal.

In 2004, appellant filed a petition for a writ of habeas corpus in the United States District Court, District of Minnesota. The petition raised the same issues that had been the subject of appellant's earlier state court appeal. By order, the U.S. District

Court denied the petition, dismissed the case with prejudice, and refused to certify the case for appeal under 25 U.S.C. § 2253(c)(1)(B) (2000). *Henderson v. State*, No. 03–6507 (D.Minn. July 25, 2005). On December 29, 2005, the Eighth Circuit Court of Appeals dismissed appellant's appeal. *Henderson v. State*, No. 05–3453 (8th Cir. Dec. 29, 2005).

On October 19, 2005, appellant filed this state court habeas corpus petition challenging the DOC's decision to sanction him for refusal to participate in the SOTP. Appellant argued that the penalty imposed on him violated his Fifth Amendment privilege against self-incrimination. The district court denied the petition without holding an evidentiary hearing. The district court followed the supreme court's decision in *State ex rel. Morrow v. LaFleur*, 590 N.W.2d 787 (Minn.1999), which held there was no Fifth Amendment violation under similar facts. *See id.* at 792–96. The district court made a factual finding that "[i]n order to be admitted to the [SOTP], an offender is required to admit and discuss the specific acts that resulted in a commitment to the Department of Corrections." This appeal follows.

## ISSUES

1. Does the extended-incarceration sanction imposed on appellant constitute "compulsion" for purposes of the Fifth Amendment?

2. Did appellant's Fifth Amendment privilege remain in effect after his direct appeal was decided?

## ANALYSIS

■ The district court's findings in ruling on a petition for habeas corpus are entitled to great weight and will be upheld if reasonably supported by the evidence. *Northwest v. LaFleur*, 583 N.W.2d 589, 591 (Minn.App.1998), *review denied* (Minn.

Nov. 17, 1998); *State ex rel. Holecek v. Ross*, 472 N.W.2d 185, 186 (Minn.App. 1991). Questions of law, however, are reviewed de novo. *State ex rel. McMaster v. Benson*, 495 N.W.2d 613, 614 (Minn.App. 1993), *review denied* (Minn. Mar. 11, 1993).

### 1. "Compulsion" Under the Fifth Amendment

■ Appellant argues that the extension of his incarceration time, which was the penalty imposed for his refusal to participate in the SOTP, constituted "compulsion" for purposes of the Fifth Amendment privilege against self-incrimination. As the district court found, appellant would have been required to discuss his offense of conviction in the SOTP.

Respondent cites a 1999 decision of the supreme court rejecting a similar argument. *See State ex rel. Morrow v. LaFleur*, 590 N.W.2d 787, 792–96 (Minn. 1999). In a recently published opinion, however, this court concluded that the supreme court's holding in *Morrow* that extending an inmate's incarceration time by 90 days did not constitute "compulsion" for Fifth Amendment purposes was effectively overruled by *McKune v. Lile*, 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). *Johnson v. Fabian*, 711 N.W.2d 540, 543–44 (Minn.App.2006), *review granted* (Minn. May 24, 2006). The *Johnson* court also held that an inmate, whose direct appeal from conviction was still pending, continued to have a Fifth Amendment privilege not to be compelled to answer questions about his offense in a mandated prison treatment program. *Id.* at 542, 545.

Respondent argues that *McKune* does not affect the *Morrow* court's analysis of the Fifth Amendment element of "compulsion." *See generally* U.S. Const. amend. V (providing that no person shall be "compelled" to be a witness against himself in a

criminal case); *Morrow,* 590 N.W.2d at 792 (noting that "[c]ompulsion is the touchstone of the Fifth Amendment" (quotation omitted)). But this court held in *Johnson* that because there was no majority in *McKune,* Justice O'Connor's concurrence advanced the narrowest rationale in support of the result and constituted the "holding" of *McKune. Johnson,* 711 N.W.2d at 543. Justice O'Connor's concurrence indicated that an extension of the period of incarceration would easily meet the established standard for "compulsion" under the Fifth Amendment. *Id.* (citing *McKune,* 536 U.S. at 52, 122 S.Ct. at 2034 (O'Connor, J., concurring)). Although respondent criticizes the holding of *Johnson,* this court accepts that opinion as precedential authority. *See generally State v. Victorsen,* 627 N.W.2d 655, 662 n. 2 (Minn. App.2001) (noting that stare decisis dictates that precedent should not be lightly overturned).

### 2. Duration of Fifth Amendment Privilege

■ Appellant argues that he retained a Fifth Amendment privilege not to discuss his offense in November 2003, when his direct appeal had already been decided, because he subsequently filed a federal petition for habeas corpus relief and was contemplating a state postconviction petition.

In *Johnson,* the inmate's direct appeal from conviction was still pending. 711 N.W.2d at 542. This court in *Johnson* ruled that the inmate's Fifth Amendment privilege still applied, citing *United States v. Duchi,* 944 F.2d 391, 394 (8th Cir.1991), in a supporting footnote. 711 N.W.2d at 542 n. 1; *see also Martin v. Flanagan,* 259 Conn. 487, 789 A.2d 979, 984–85 n. 4 (2002) (listing state and federal cases in support of proposition that the privilege may be invoked by a witness "whose conviction has

not been finalized on direct appeal"). But here, appellant's direct appeal had been decided and the Minnesota Supreme Court had denied further review almost four months before appellant's evaluation for SOTP treatment.

The United States Supreme Court has tangentially addressed the problems of defining when the privilege against self-incrimination ends. *See Mitchell v. United States,* 526 U.S. 314, 326, 119 S.Ct. 1307, 1314, 143 L.Ed.2d 424 (1999). In *Mitchell,* the Court rejected the claim that the privilege did not exist in the context of sentencing and stated that it only ends when there can be "no further incrimination" or "[i]f no adverse consequences can be visited upon the convicted person by reason of further testimony." *Id.* at 325–26, 119 S.Ct. at 1313–14. In weighing the problem in the context of the case before it, the Court pointed out that the privilege ceases when "the sentence has been fixed and the judgment of conviction has become final." *Id.* at 326, 119 S.Ct. at 1314. The Eighth Circuit Court of Appeals in *Duchi* stated that

> [t]he better rule, however, appears to be that the Fifth Amendment right not to testify concerning transactions for which one has been convicted continues until the time for appeal has expired or until the conviction has been affirmed on appeal.

944 F.2d at 394.

Both *Mitchell* and *Duchi* appear to refer to the *direct* appeal. Neither addresses the multiple avenues of collateral review and the appellate review they may entail. Extending the *Mitchell* and *Duchi* holdings to collateral attacks such as a federal habeas petition or a state postconviction petition would extend almost indefinitely the Fifth Amendment privilege. Neither case requires that result. At the same time, cases may arise in which a funda-

mental injustice occurs that only can be addressed in a collateral review. To say the Fifth Amendment should never survive to collateral proceedings is to ignore such a possibility.

Appellant cites *Thomas v. United States*, 368 F.2d 941 (5th Cir.1966), in support of his claim that his Fifth Amendment privilege remained even though his conviction had been affirmed on direct appeal. In *Thomas*, the court noted that the defendant had open to him "the processes of motion for new trial ..., appeal, petition for certiorari, and collateral attack." *Id.* at 945. But in *Thomas* the defendant had yet to be sentenced when the court invited his confession. *Id.* at 942. Any suggestion in *Thomas*, therefore, that the Fifth Amendment privilege would survive until all means of collateral attack were exhausted would be dictum.

■ We note that a conviction is considered final, for purposes of the retroactive application of new rules, when the time to file a direct appeal has expired or the direct appeal has been decided and the time to petition for a writ of certiorari has expired. *State v. Petschl*, 692 N.W.2d 463, 470 (Minn.App.2004), *review denied* (Minn. Jan. 20, 2005). In the case before us, appellant had a jury trial, was convicted, appealed to this court, and unsuccessfully sought review by the Minnesota Supreme Court. This court considered the merits of his claims. Appellant's conviction, therefore, became final in October 2003, when his time to file a petition for a writ of certiorari expired. *See* Sup.Ct. R. 13.1.

In 2004, appellant petitioned for habeas corpus in the U.S. district court. All of the issues raised in the federal habeas corpus action had been raised in the state court proceeding and the state court appeal. There is nothing in the record to indicate that the state court proceedings failed to adequately address appellant's

rights or that the postconviction proceeding was necessary to correct a manifest injustice. In fact, the U.S. district court actually refused to certify appealability of appellant's petition for habeas corpus relief. Although the very act of bringing the federal habeas corpus proceeding may have been an assertion of a manifest injustice, the bald assertion of claims in an appeal is attenuated. Indeed, it is too attenuated to overcome the state's strong interest in treating sex offenders and having finality in the criminal process so that inmates can be required to participate in the designated treatment program.

In the end, we must balance the interests of the state against the rights of criminal defendants. An appropriate balance that limits the duration of the Fifth Amendment privilege was observed in this case. Appellant refused to participate in the SOTP in July 2002, when his direct appeal was still pending. The DOC imposed no sanctions on appellant at the time of that refusal. Appellant was next interviewed for the SOTP in November 2003, after his direct appeal had been decided. By postponing the necessity that appellant make a decision about the SOTP, DOC honored appellant's Fifth Amendment privilege. This delay gave appellant a fair and reasonable opportunity to pursue his legal rights on appeal and when not successful, absent a showing of manifest injustice, set a time certain when he would be required to participate in treatment. This balance properly considered the competing interests. Under appellant's position, the Fifth Amendment privilege would virtually never end because an inmate would always have avenues of collateral challenge available to him. Treatment could be avoided indefinitely.

Based on the record before us, we conclude that appellant no longer has a Fifth

Amendment right to remain silent about the events that lead to his conviction.

## DECISION

We agree with appellant that even a modest extension of his incarceration constitutes compulsion for purposes of the Fifth Amendment. However, absent a showing of manifest injustice, once appellant's direct review had concluded, he no longer enjoyed a Fifth Amendment privilege to refuse to participate in the sex-offender treatment program, in which he could be required to discuss his offense. Accordingly, we conclude that the district court properly denied the petition for a writ of habeas corpus.

**Affirmed.**