**Jim Adam ROTH, petitioner, Appellant,**

v.

**COMMISSIONER OF CORRECTIONS, Respondent.**

No. A08–0269.

Court of Appeals of Minnesota.

Dec. 23, 2008.

■■■■■■■■■■■■■■■■■■■■■■■■

Jim Adam Roth, Faribault, MN, pro se appellant.

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge; WORKE, Judge; and CONNOLLY, Judge.

## OPINION

WORKE, Judge.

Appellant argues that the district court erred in denying his petition for a writ of habeas corpus because (1) he was disciplined for refusing to admit to sex offenses and (2) *Johnson v. Fabian*, 735 N.W.2d 295 (Minn.2007) applies retroactively to his case. We affirm.

## FACTS

In 2001, appellant Jim Adam Roth was charged, among other things, with first-degree criminal sexual conduct, second-degree criminal sexual conduct, and kidnapping. On July 20, 2001, appellant pleaded guilty to kidnapping, and the remaining charges were dismissed. Appellant was sentenced to 158 months in prison and was required to provide a DNA sample and register as a predatory sex offender upon his release. Appellant never filed a direct appeal. Appellant filed a petition for postconviction relief, which was denied in May 2008 and is part of a separate appeal before this court.

While incarcerated, the program-review team directed appellant to complete the treatment recommendations of a sex-offender treatment professional. A corrections program therapist recommended that appellant enter and complete the Department of Corrections (DOC) sex-offender programming. On September 1, 2006, appellant was interviewed by corrections program staff for admission into the Sex Offender Treatment Program at Lino Lakes. Appellant refused to move into the treatment unit, stating that he did not need sex-offender treatment because he was not convicted of a sex offense. Appellant was not accepted into the treatment program and, as a result was deemed unamenable to treatment.

Appellant was subsequently charged with a violation of the Offender Discipline Regulations (ODR). Appellant appeared in a disciplinary proceeding and argued that his medical situation made him unable to participate in the treatment program. Appellant was found guilty of violating ODR 510—Mandated Treatment Failure/Refusal. The hearing officer found that appellant was directed to complete sex-offender treatment and that appellant was denied admission to the program because he was deemed unamenable to treatment. The hearing officer found that appellant's defense was not valid. Appellant was disciplined with 45 days of extended incarceration. Appellant appealed the decision, and the findings were upheld on administrative appeal.

In April 2007, appellant filed a petition for a writ of habeas corpus, arguing that his imprisonment was illegally extended as punishment for refusing to participate in a "non-court mandated" treatment program. The district court denied appellant's petition, finding that the commissioner has the authority to require appellant's participation in sex-offender treatment and to

discipline appellant for refusing to participate. Appellant moved for reconsideration and for an evidentiary hearing, again arguing that treatment was not court-mandated and that he was not convicted of a sex offense. The district court denied appellant's motion for reconsideration.

Appellant filed a second motion for reconsideration, arguing that "State prison officials can't discipline sex offenders for refusing to admit to the crimes." Appellant also argued that "a convicted individual can claim the privilege against self-incrimination as long as a direct appeal is pending." The district court denied appellant's motion for reconsideration, finding that *Johnson,* 735 N.W.2d 295 is not to be applied retroactively and does not apply to appellant's case. This appeal follows.

## ISSUE

Did the district court err in denying appellant's petition for a writ of habeas corpus?

## ANALYSIS

 A writ of habeas corpus is a statutory civil remedy available "to obtain relief from imprisonment or restraint." Minn.Stat. § 589.01 (2006). "A writ of habeas corpus may also be used to raise claims involving fundamental constitutional rights and significant restraints on a defendant's liberty or to challenge the conditions of confinement." *State ex rel. Guth v. Fabian,* 716 N.W.2d 23, 26–27 (Minn. App.2006), *review denied* (Minn. Aug. 15, 2006). This court gives "great weight to the [district] court's findings in considering a petition for a writ of habeas corpus and will uphold the findings if they are reasonably supported by the evidence." *Northwest v. LaFleur,* 583 N.W.2d 589, 591 (Minn.App.1998), *review denied* (Minn. Nov. 17, 1998). Questions of law are reviewed de novo. *Id.*

### *Authority to Order Treatment and Impose Sanctions*

 Appellant argues that the DOC lacked authority to order him to complete treatment because he was not convicted of a sex offense. A party seeking appellate review of an agency decision "has the burden of proving that the agency has exceeded its statutory authority or jurisdiction." *Lolling v. Midwest Patrol,* 545 N.W.2d 372, 375 (Minn.1996). When an agency makes a decision that is within its area of expertise, the decision "enjoy[s] a presumption of correctness." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.,* 624 N.W.2d 264, 278 (Minn.2001).

 The Commissioner of Corrections has authority "to prescribe reasonable conditions and rules for ... conduct, instruction, and discipline" of persons committed to the commissioner's custody. Minn.Stat. § 241.01, subd. 3a(b) (2006). The commissioner has authority to establish rules by which an inmate may lose "good time" if the inmate commits any disciplinary offense. Minn.Stat. § 244.04, subd. 2 (2006). The commissioner administers a system of sex-offender treatment programs. *See* Minn.Stat. § 241.67, subd. 1(1) (2006). Nothing in the statute "requires the commissioner to accept or retain an offender in a program if the offender is determined by prison professionals as unamenable to programming within the prison system or if the offender refuses or fails to comply with the program's requirements." *Id.,* subd. 3(a) (2006). "The commissioner may impose disciplinary sanctions upon any inmate who refuses to participate in rehabilitative programs." Minn.Stat. § 244.03 (2006).

No inmate who violates a disciplinary rule or refuses to participate in a rehabilitative program as required under

section 244.03 shall be placed on supervised release until the inmate has served the disciplinary confinement period for that disciplinary sanction.... The imposition of a disciplinary confinement period shall be considered to be a disciplinary sanction imposed upon an inmate, and the procedure for imposing the disciplinary confinement period and the rights of the inmate in the procedure shall be those in effect for the imposition of other disciplinary sanctions at each state correctional institution.

Minn.Stat. § 244.05, subd. 1b(b) (2006).

DOC Division Directive 203.013, promulgated by the commissioner in accordance with statutory mandates, authorizes the DOC to direct sex offenders to complete treatment recommendations. The directive defines a "sex offender" as "an offender who is subject to predatory offender registration, or has a prior charge or conviction for an offense that was sex related." *Cf.* Minn.Stat. § 241.67, subd. 8(a) (2006) (defining "sex offender" for purposes of community-based treatment, as a person subject to predatory offender registration). An offender who is denied treatment because he is deemed unamenable violates ODR 510 and is subject to disciplinary sanctions.

■ Appellant fits the DOC definition of a "sex offender" because he was *charged* with first-and second-degree criminal sexual conduct. Additionally, appellant is required to provide a DNA sample and to register as a predatory sex offender upon release. Therefore, the DOC had the authority to direct appellant to undergo treatment. And the DOC was authorized to appropriately sanction appellant for his failure to be accepted into treatment, resulting in the determination that he is unamenable to programming, which is a sanctionable disciplinary violation.

## Fifth Amendment Privilege

Appellant also argues that the disciplinary sanction imposed on him violated his Fifth Amendment privilege that he not be compelled to answer questions in the treatment program that might incriminate him.

In *Johnson v. Fabian,* this court held that while an inmate's conviction is on appeal, he has a Fifth Amendment privilege that protects him from being sanctioned for refusal to discuss the offense of conviction in a prison treatment program. 711 N.W.2d 540, 542, 545 (Minn.App.2006), *aff'd,* 735 N.W.2d 295 (Minn.2007). This court also held that, after the right to direct appeal has been exhausted, an inmate generally loses that privilege despite the availability to him of a collateral attack upon the conviction. *State ex rel. Henderson v. Fabian,* 715 N.W.2d 128, 133 (Minn.App.2006), *rev'd on other grounds, Johnson v. Fabian,* 735 N.W.2d 295, 297 (Minn.2007).

The supreme court granted review in both of those cases, consolidated them, and issued an opinion affirming *Johnson,* holding that the Fifth Amendment privilege continues during the pendency of a direct appeal. *Johnson,* 735 N.W.2d at 310. But the court reversed *Henderson,* holding that the privilege continues as long as there is a "real and appreciable risk" that the inmate's statements could be used in a perjury prosecution. *Id.* at 312. The supreme court explained that it did not need to address the status of the Fifth Amendment privilege when the inmate has a collateral attack pending or is contemplating one. *Id.* at 311 n. 6 ("[T]he question of whether an offender who presently has a collateral attack on his conviction pending can invoke the privilege is not before this court.").

In *Henderson,* this court rejected the argument that an inmate retained a Fifth

Amendment privilege not to discuss his offense for the purpose of placement in sex-offender treatment after his direct appeal had already been decided, after he filed a federal petition for habeas corpus relief, and when he was contemplating a postconviction petition. 715 N.W.2d at 131–32. This court explained that extending the Fifth Amendment privilege to the period of collateral review would extend the privilege almost indefinitely, and held that "absent a showing of manifest injustice," once his direct appeal has concluded, an offender no longer enjoys the Fifth Amendment privilege to refuse to participate in sex-offender treatment. *Id.* at 132, 133. This court concluded that the inmate's "bald assertion of claims in an appeal" was "too attenuated to overcome the state's strong interest in treating sex offenders and having finality in the criminal process so that inmates can be required to participate in the designated treatment program." *Id.* at 132.

█ Although the supreme court reversed *Henderson* based on the risk of a potential perjury prosecution, the court did not address the effect of the pendency or possibility of collateral-review proceedings. *Johnson,* 735 N.W.2d at 311. Because the supreme court did not address this issue and because the court did not criticize *Henderson* on the issue, we now hold that once a direct appeal has concluded and the risk of a perjury prosecution is absent or has expired, an offender no longer enjoys the Fifth Amendment privilege to refuse to participate in sex-offender treatment.

█ Appellant did not have a trial but, rather, pleaded guilty. Thus, there is not a "real and appreciable risk" that any of appellant's statements in sex-offender treatment could be used in a perjury prosecution. *See id.* at 312. Appellant pleaded guilty on July 20, 2001, and had 90 days in which to file a direct appeal. Appellant

did not file a direct appeal; therefore, his conviction became final on October 18, 2001. Appellant did file a postconviction petition, which was denied and is now part of a separate appeal before this court.

## DECISION

Because the time for appellant to take a direct appeal had passed and there is no manifest injustice, the Fifth Amendment privilege no longer applied when appellant was interviewed on September 1, 2006; therefore, the district court did not err in denying appellant's petition for a writ of habeas corpus.

**Affirmed.**