# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-2046

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Samuel Khabeer, Sr., | * | |
| | * | |
| Appellant. | * | |

_____

No. 04-2091

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Karen Cox Khabeer, | * | |
| | * | |
| Appellant. | * | |

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted: January 12, 2005
Filed: June 10, 2005

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

COLLOTON, Circuit Judge.

Samuel Khabeer, Sr., and Karen Cox Khabeer were convicted of multiple fraud-related charges following a jury trial, and sentenced to terms of imprisonment. The principal issues on this appeal concern the constitutionality of a search at the Khabeer residence in which police discovered evidence used to secure the convictions. We conclude that the record does not contain adequate findings of fact for us to resolve the Khabeers' appeal of the district court's denial of their motion to suppress evidence. Therefore, we remand the case to the district court for the limited purpose of making supplemental findings of fact necessary to the resolution of the Fourth Amendment claims, while retaining jurisdiction.

I.

The district court made only limited factual findings concerning the events surrounding the disputed search at the Khabeer residence. We therefore recite facts presented at hearings on the motions to suppress, pointing out material disputes where they are relevant.

According to evidence presented at one hearing, North Little Rock police officer Paul Hampton responded to a call from the Sears store at McCain Mall in Little Rock on December 23, 2000. Sears personnel advised Hampton of a scenario involving two customers, a male and a female, who had visited the store twice that day. During their first visit, the couple purchased various goods, including a large-screen television, a DVD player, and a television stand. When attempting to make the purchase, the couple claimed to have lost their Sears credit card.

To assist the clerk in searching Sears records for the credit card number associated with the allegedly lost card, the couple presented a military identification in the name of Mary Anne Dawkins. The Sears clerk asked the male customer for his identification, but the man claimed first that he had left it in his truck. The Sears clerk accompanied the man to his vehicle, where he searched unsuccessfully for his identification. When they returned to the store, the clerk wrote down the VIN number of the vehicle and noted that it had a brand-new North Point sticker on its window. The Sears clerk nonetheless provided the couple with a credit card number for Dawkins and permitted them to charge the goods to the Dawkins card.

The man and woman returned to the same Sears store later in the day and attempted to exchange the television for a different model. When a Sears employee requested identification, the couple abandoned the transaction and departed the store. Sears then contacted the Mary Anne Dawkins associated with the credit card number, and determined that she was not the woman involved in the transactions and that she had not authorized the use of her credit card or military identification. At that point, Sears contacted Officer Hampton.

Police investigating the Sears transactions were able to track the white pickup truck identified by the Sears employee to West 34th Street in North Little Rock. Officer James Wright testified that at approximately 5:00 p.m., outside 901 West 34th Street, he located the truck and three persons, Samuel Khabeer, Sr., Karen Cox Khabeer, and Samuel Khabeer, Jr. Wright noted that Khabeer, Sr., and Karen Khabeer matched the description of the couple from Sears. Wright had begun asking basic questions of the Khabeers when he saw a man exit from the residence at 901 West 34th Street. According to Wright, he made contact with the man, Roy Whiddon, who informed the officer that he was performing construction work on the Khabeers' house. At that point, Wright testified, he received a radio call informing him that the suspects in the Sears transactions had purchased a large screen television.

Wright said that while standing in the driveway of the Khabeer residence, he observed a Toshiba large-screen television box through a window of the house.

North Little Rock Officer Scott Miller testified that he arrived on the scene during the investigation. According to Wright, he asked Miller to obtain information from Whiddon. Miller said he met Whiddon in the house's carport and told him that he needed to get information from Whiddon and his wife, who was assisting with the construction work. Whiddon explained that his wife was inside the home and then entered the residence, followed by Miller. While inside the house, Miller observed a large box in the living room with "Toshiba" written on the side. Miller testified that he left the house and did not indicate to Wright what he had seen inside. While Miller was with the Whiddons, Wright followed up on his observation of the television by arresting Samuel Khabeer, Sr., and Karen Cox Khabeer.

Detective Cole Dearing of the North Little Rock Police Department began contacting officers who had been involved in the investigation to gather information for an affidavit in support of a search warrant. According to Dearing, he learned that Wright had seen a television through the living room window of the residence, and that Miller had entered the residence to talk to Whiddon. Dearing testified that Miller did not relate to him what Miller had seen in the residence. Dearing prepared an affidavit, which recounted Wright's observation of the Toshiba television box, but did not mention Miller's observation of the same box.

Dearing obtained the warrant and police began a search of the residence. Based on information from Sears, the warrant listed the property to be seized as a Toshiba big screen television, a DVD player, a television stand, a lighted mirror, a can opener, pots and pans, and an identification card in the name of Mary Anne Dawkins. In the course of the search, police seized the listed items, as well as receipts for the day's purchases from Sears, and a large number of identification documents, credit cards, and credit reports bearing names other than the Khabeers'.

-4-

Police found the Dawkins identification card and other documents in a box in a closet of the master bedroom.  Other documents were discovered in a box in a utility room.

Prior to trial, the Khabeers moved to suppress evidence seized from their home on the ground that the search violated their rights under the Fourth Amendment.  At the conclusion of an initial evidentiary hearing in June 2003, the district court announced that it would deny the motion to suppress.  The court subsequently advised the parties that "in attempting to prepare an order reflecting that [it] overruled the motion to suppress," the court encountered difficulty with part of the search.  Specifically, the court asked under what authority law enforcement officers seized false identity cards that were found in the box in the bedroom closet, but which were not listed in the search warrant.  The court explained that it believed the basis was that "the officer could search the closet and elsewhere while searching for the numerous items listed in the warrant," but requested further briefing from the parties before entering a final order.  The district court then convened a second evidentiary hearing at the location of the residence, in order to evaluate Officer Wright's testimony that he observed a television box from the driveway.  On August 13, 2003, the court entered an order finding that Wright "could see, and did see, what he previously testified about," and "reaffirm[ing]" the court's decision to deny the motion to suppress.

The case proceeded to trial, and a jury found the Khabeers guilty of several fraud charges.[1]  Karen Cox Khabeer was sentenced to 90 months' imprisonment and

---

[1]Samuel Khabeer, Sr., was convicted of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 371 and 1344; bank fraud, in violation of 18 U.S.C. § 1344; aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 2 and 1344; aiding and abetting possession with intent to use false identification documents, in violation of 18 U.S.C. § 1028(a)(3); two counts of aiding and abetting possession of an unauthorized access device, in violation of 18 U.S.C. §§ 2 and 1029(a)(2); and aiding and abetting possession of forged checks, in violation of 18 U.S.C. §§ 2 and 513(a).

Samuel Khabeer, Sr., was sentenced to 60 months' imprisonment. The Khabeers were ordered to pay $92,595.40 in restitution, for which they were jointly and severally liable.

## II.

On appeal, the Khabeers challenge the district court's denial of their motion to suppress evidence. "When reviewing a district court's denial of a motion to suppress, we examine for clear error the district court's factual findings, and we review de novo the ultimate question of whether the Fourth Amendment has been violated." *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004).

First, the Khabeers argue that Officer Wright violated their Fourth Amendment rights by intruding on the curtilage of their home when he observed the television through their front window. According to the Khabeers, Wright could not have seen the television without violating the curtilage of their home. The Khabeers claim that Wright's testimony is thus incredible. The district court, however, went to great lengths to develop the facts surrounding Wright's view of the television set, going so far as to convene court at 901 West 34th Street to observe personally what was visible from the location where Wright said he was standing in when he saw the television. The court found that:

---

Kharen Cox Khabeer was convicted of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 371 and 1344; three counts of bank fraud, in violation of 18 U.S.C. § 1344; two counts of aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 2 and 1344; aiding and abetting possession with intent to use false identification documents, in violation of 18 U.S.C. § 1028(a)(3); aiding and abetting possession of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); two counts of aiding and abetting use of an unauthorized access device, in violation of 18 U.S.C. §§ 2 and 1029(a)(2); and aiding and abetting possession of forged checks, in violation of 18 U.S.C. §§ 2 and 513(a).

> [a]fter viewing the scene of the subject search from the vantage point from which most of the information for the affidavit for the search warrant is primarily based; hearing the testimony of Officer Wright from the vantage point from where he obtained the information; and after personally viewing the window in question from the officer's vantage point, I find that he could see, and did see, what he has previously testified about.

(Order dated Aug. 13, 2003, Addendum at 21). The Khabeers provide no basis for us to conclude that the district court's personal evaluation of the plausibility of Wright's testimony is clearly erroneous, and we reject their argument.

Once it is established that Wright observed the television from the driveway, it is clear that he committed no Fourth Amendment violation. "[N]o Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors – such as driveways, walkways, or similar passageways." *United States v. Reed*, 733 F.2d 492, 501 (8th Cir. 1984). The district court therefore correctly determined that no Fourth Amendment violation occurred when Wright observed the television.

The Khabeers next argue that the police violated their Fourth Amendment rights by seizing evidence that was not particularly described in the warrant. They also assert that "the police exceeded the scope of the warrant by continuing to search once they already had seized the items authorized by the warrant." (Br. of Appellants at 22). The government responds that the search was authorized by the warrant, and that the evidence was seized in accordance with the plain view exception to the Fourth Amendment's warrant requirement. "It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating character is immediately apparent, and the officer has a lawful right to access the object." *United States v. Bustos-Torres*, 396 F.3d 935, 944 (8th Cir. 2005).

We conclude that the search of the home was proper. The officers had a right to be in the Khabeer residence by virtue of the search warrant. Because the identity card in the name of Mary Anne Dawkins, one of the objects specified in the warrant, is a small object, the officers were authorized to search all areas in the residence that could conceal an identification card. Many of the disputed identification documents and credit card reports, including the Dawkins military identification, were found in a box in the master bedroom closet. The remainder of the identification cards were seized from a box in a utility room. Although the Khabeers argue that the officers should have stopped searching small areas once they found the Dawkins identification card, there was uncontested evidence that the documents in the utility room were found before the discovery of the Dawkins card and other documents in the master bedroom, (Tr. of Motions Hearing at 203), and we think a corresponding conclusion about timing is implicit in the district court's decision to deny this aspect of the motion to suppress. *See United States v. Dickson*, 58 F.3d 1258, 1265 (8th Cir. 1995).

The seizure of evidence not listed in the warrant also was permissible. The incriminating nature of the seized evidence – two large caches of identity documents issued in the names of people other than the Khabeers – was immediately apparent. Receipts for the purchase of the Sears goods named in the warrant were found in plain view on the dining room table, and they were clearly incriminating by virtue of their connection to the items named in the warrant. Thus, all evidence seized from the Khabeers' home, but not particularly identified in the warrant, was seized in accordance with the plain view exception to the warrant requirement, and as long as the warrant itself was valid, the district court did not err in admitting that evidence.

Finally, the Khabeers claim that regardless of the constitutionality of Wright's initial observation and the scope of the search, Miller's initial entry into their home and observations of the Toshiba television box constituted an illegal search that

tainted the application for the search warrant. Thus, they argue, any evidence seized as a result of the warrant should have been suppressed.

The Fourth Amendment generally prohibits police from entering a home without a warrant unless the circumstances fit an established exception to the warrant requirement. *See Payton v. New York*, 445 U.S. 573, 589 (1980). The government does not defend the constitutionality of Miller's entry and his observations in the home. The government claims, however, that because Miller's information was not used in the application for a search warrant, the independent source doctrine permits the admission of evidence later seized from the home, despite an earlier unlawful search by Miller.

The independent source doctrine provides that evidence initially discovered during an unlawful search, but later obtained independently through activities untainted by the illegality, may be admitted into evidence. *Murray v. United States*, 487 U.S. 533, 537 (1988). This rule is rooted in the view that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443 (1984). To establish that the independent source doctrine applies to evidence seized pursuant to a warrant obtained after an unlawful entry to a home, the government must show both (1) that the decision to seek the warrant was independent of the unlawful entry – i.e., that police would have sought the warrant even if the initial entry had not occurred – and (2) that the information obtained through the unlawful entry did not affect the magistrate's decision to issue the warrant. *Murray*, 487 U.S. at 542; *United States v. Leveringston*, 397 F.3d 1112, 1115 (8th Cir. 2005).

The record shows that the second criterion clearly is satisfied in this case. The affidavit in support of the search warrant did not even mention Officer Miller or his

observations of the television box after entering the residence, and the district court found credible Officer Wright's testimony that he viewed the television box through the window from the driveway. There is thus no basis to conclude that the magistrate who issued the warrant was influenced by Miller's unlawful entry.

As to whether the police would have sought a warrant even without Miller's observation of the television, however, the district court made no specific finding. The affiant, Detective Dearing, testified that Miller did not tell him about anything he had seen in the house during Miller's illegal entry, and Miller said he did not tell Dearing about the television. Officer Wright said Miller "made some statements" to Dearing while all of the officers were gathered to discuss the search warrant affidavit, but that Wright did not know whether anything Miller saw or said was used in the affidavit. The Khabeers suggest that we should infer that because Miller participated in discussions about what happened at the scene of the initial investigation, he must have told Dearing about seeing the television box, and that Miller's illegal entry thus tainted the decision to seek a warrant. The district court made no findings on this point.

The absence of an explicit finding about whether Miller's observations during his unlawful entry were conveyed to Dearing, or whether the decision to seek a warrant was prompted by Miller's observations, precludes us from resolving the appeal at this juncture. The Supreme Court in *Murray* emphasized that "it is the function of the District Court rather than the Court of Appeals to determine the facts," 487 U.S. at 543, and the Court directed a remand to the district court in that case because the district court did not "explicitly find that the agents would have sought a warrant if they had not earlier entered the warehouse." *Id.* One might infer from the district court's finding about Officer Wright's observation of the television box that the district court believed Wright's observation, rather than Miller's, motivated the decision to seek the warrant. But the finding on Wright's observation might also have been directed merely to whether the affidavit contained *sufficient* credible

-10-

information to justify the warrant (regardless of what prompted the application), because the Khabeers had challenged Wright's veracity. As in *Murray*, we conclude that the possible inferences to be drawn from the record are not "clear enough to justify the conclusion that the District Court's findings amounted to a determination of independent source." *Id.*

Accordingly, we retain jurisdiction over these appeals, but remand to the district court for the limited purpose of making findings of fact as to whether the officers' decision to seek a search warrant for the Khabeer residence was prompted by what Officer Miller observed during his initial entry to the residence. *See Murray*, 487 U.S. at 542; *United States v. Runyan*, 275 F.3d 449, 468 (5th Cir. 2001). The clerk is directed to return the record in these cases to the district court. Once the district court's supplemental order is entered, the clerk of the district court shall return the record, as supplemented, to this court for disposition of these appeals by this panel.

_____