# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3632

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Southern District of Iowa. |
| | * | |
| Richard Dean Swope, | * | [PUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: May 13, 2008
Filed: September 12, 2008

_____

Before RILEY, BOWMAN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Richard Dean Swope was indicted on one count each of bank robbery and use of a firearm in furtherance of a crime of violence. See 18 U.S.C. §§ 2113(a), (d), 924(c). Swope moved to suppress both physical evidence obtained pursuant to a search warrant and statements he made to the police. The district court[1] granted

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

suppression of Swope's statements but denied suppression of the physical evidence. Pursuant to Swope's conditional plea agreement, Swope appeals the district court's partial denial of his motion to suppress. We affirm.

## I. FACTS

At 7:45 a.m. on August 8, 2006, a man wearing a mask, a wig, glasses, and a green coat entered and robbed the First National Bank of Anita, Iowa. During the robbery, the robber fired a .40 caliber handgun and absconded with over $5,000 in a black duffel bag. Immediately after the robbery, Dean Carstens, the bank's office manager, observed a man whom he thought to be the robber drive away in a red late-1980s Oldsmobile.

Carstens communicated his description of the vehicle to the police, and Mark Knudsen, a county road worker, overheard that description on his scanner. Shortly thereafter, he observed just such a vehicle pass by his location heading west on Commercial Street in nearby Atlantic, Iowa. He followed the vehicle until it parked behind Swope's residence in Atlantic. He notified the police, and Lieutenant Jon Parsons of the Atlantic Police Department was dispatched to the residence, where he surveyed the area and ran a check on the plates of the two cars parked there. One of the cars, a red Oldsmobile, was registered to Swope's deceased mother, and Lt. Parsons noted that tracks leading to it were consistent with it having been driven earlier that day. Lt. Parsons then approached the open back door of the house but was unable to observe anything inside the house. Stepping onto the threshold of the door and entering into the house, he observed Swope, who was wearing a green coat and was rifling through a black duffel bag. He then questioned Swope, accompanying him outside and refusing Swope's requests that he leave the property. Lt. Parsons called for backup and then called the sheriff at approximately 8:40 a.m., telling him that he "believed at this point that maybe this was our man." (Suppression Hearing Tr. at 33.)

Meanwhile, Chief Deputy Sheriff Brian Rink and Special Agent Jeff Atwood from the Federal Bureau of Investigation were dispatched to the bank. Special Agent Atwood identified a spent shell casing found at the scene as a .40 caliber casing. He also ascertained that Swope had used a .40 caliber gun while serving as police chief in Corning, Iowa. After Lt. Parsons contacted the sheriff, Chief Deputy Rink and Special Agent Atwood were dispatched to the Swope residence. Chief Deputy Rink had instructions to bring Carstens to identify the car behind Swope's residence. Upon arrival, Carstens made that identification. At that point, the officers began to prepare their search warrant application. Chief Deputy Rink and Lt. Parsons then left to obtain the warrant while other officers stayed behind to question and detain Swope. The warrant application contained affidavits from Lt. Parsons, Chief Deputy Rink, Carstens, and Knudsen. It also contained a facsimile from the Corning Police Department which stated that Swope had carried a .40 caliber handgun while on duty. The officers obtained a search warrant for Swope's residence, and among the items found during the subsequent search were a wig, a .40 caliber handgun, and a black duffel bag with $5,180 inside. Once the search was concluded, Special Agent Atwood read Swope his Miranda[2] rights.

## II. PROCEDURAL POSTURE

Swope moved to suppress both his statements to the police and the physical evidence obtained pursuant to the search warrant. As to his statements, he argued that some were obtained in violation of his Miranda rights while others were the fruit of the poisonous tree. As to the physical evidence, he argued that the warrant was invalid because the affidavits in the application were based primarily on observations made during what he characterized as Lt. Parsons' illegal initial entry. The district court found that Lt. Parsons' initial entry into Swope's residence was in violation of the Fourth Amendment and, accordingly, suppressed Lt. Parsons' observations during

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

that entry. Next, the district court granted the suppression motion as to all of Swope's statements, finding that some were the fruit of the poisonous tree and that the rest were obtained in violation of Swope's <u>Miranda</u> rights. Finally, the district court found that, under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), once the inadmissible statements and observations were redacted from the search warrant application affidavits, the remaining portions nevertheless supported probable cause. Accordingly, the district court denied Swope's motion to suppress the physical evidence. Swope filed a motion to reconsider, arguing that, under the independent source doctrine articulated in <u>Murray v. United States</u>, 487 U.S. 533 (1988), the tainted information included in the application vitiated the search warrant, thereby requiring suppression of the physical evidence. The district court's Supplement to Ruling on Defendant's Motion to Suppress modified its original ruling only to the extent that it added the following findings: even without the illegally acquired information 1) the police would have brought Carstens to identify the car; 2) the officers would have been prompted to apply for the warrant; and 3) the issuing magistrate would have issued the warrant if presented with only the redacted application. (R. at 118.) Accordingly, the district court again refused to suppress the physical evidence. Swope then entered into a conditional plea agreement in which he reserved his right to appeal the district court's denial of his motion to suppress, which appeal is now before us.

## III. DISCUSSION

Reviewing findings of fact for clear error and determinations of probable cause *de novo*, <u>United States v. Solomon</u>, 432 F.3d 824, 827 (8th Cir. 2005), we will affirm "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." <u>United States v. Comstock</u>, 531 F.3d 667, 675-76 (8th Cir. 2008) (internal marks omitted). This case requires us to examine the independent source exception to the exclusionary rule in the context of a tainted search warrant.

The exclusionary rule "reaches not only primary evidence obtained as a direct result of an illegal search or seizure . . . but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." Segura v. United States, 468 U.S. 796, 804 (1984) (internal marks omitted). However, the exclusionary rule is inapplicable when the connection between the constitutional violation and the evidence to be excluded is "so attenuated as to dissipate the taint." Nardone v. United States, 308 U.S. 338, 341 (1939). This is the case when the Government shows that the evidence was acquired through a source independent of the taint. Wong Sun v. United States, 371 U.S. 471, 487 (1963). The question in this case is whether, under the independent source doctrine (which is "closely related to the inevitable discovery doctrine," Nix v. Williams, 467 U.S. 431, 443 (1984)), the warrant is an independent source for the physical evidence.

A warrant obtained after an illegal search is not an independent source if either of the following are true: "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry," and "if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." Murray, 487 U.S. at 542. In other words, Murray asks the following two questions, both of which must be answered in the affirmative for the warrant to be an independent source: first, would the police have applied for the warrant had they not acquired the tainted information; and second, do the application affidavits support probable cause after the tainted information has been redacted from them.

Swope urges a strictly literal interpretation of the second Murray prong, asking whether the tainted information in any way "affected [the magistrate's] decision to issue the warrant." Murray, 487 U.S. at 542. However, no circuit has adopted such a reading, and we decline to do so here. "Invalidating a search warrant because the magistrate was affected in some minor way by tainted information, when the warrant would have been granted even without the tainted information," United States v.

Jenkins, 396 F.3d 751, 758-59 (6th Cir.), cert. denied, 546 U.S. 813 (2005), "would work against the principle that the fruit of the poisonous tree doctrine not be used to place the government in a worse position than it would have been in absent its illegal conduct," United States v. Dessesaure, 429 F.3d 359, 366 (1st Cir. 2005) (internal marks omitted). Swope's approach would constitute a *per se* rule in favor of suppression when the supporting affidavits contain tainted information, thereby undermining the independent source doctrine's foundational goal of "putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." Nix, 467 U.S. at 443. We therefore read the second prong to "signify affect in a *substantive* manner," United States v. Herrold, 962 F.2d 1131, 1141 (3rd Cir.), cert. denied, 506 U.S. 958 (1992), i.e., whether removing the tainted information also removes the basis for probable cause.

We note that the phrase from Murray relied upon by Swope was peripheral to Murray's holding. Other circuits have reasoned that the offhand nature of the phrase–and its easy characterization as dicta–suggests that the Court did not intend for that phrase to displace the practice of redacting problematic information from search warrant application affidavits and analyzing the remainder for probable cause under Franks. See United States v. Markling, 7 F.3d 1309, 1316-17 (7th Cir. 1993); United States v. Restrepo, 966 F.2d 964, 970 (5th Cir. 1992), cert. denied, 506 U.S. 1049 (1993). Although the context in Franks differs from the present context–the affidavit in Franks did not include information derived from a Fourth Amendment violation, but instead included facts that the police fabricated–other circuits have found that difference to be insufficient to justify a departure from the traditional Franks-based redaction analysis. See Dessesaure, 429 F.3d at 366-67 ("Every circuit to consider the question has held that the Court's instruction in Murray to analyze whether the tainted information affected the magistrate's decision to issue the warrant did not mean to change the dominant pre-existing approach under Franks.") (citing cases). Even after Murray, probable cause continues to be the benchmark for evaluating tainted affidavits. See United States v. Hernandez Leon, 379 F.3d 1024, 1027 (8th Cir. 2004)

(stating that "[t]he sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information"); United States v. Johnston, 876 F.2d 589, 594 (7th Cir.) (Posner, J., concurring), cert. denied, 493 U.S. 953 (1989) (citing cases and stating that "[l]oads of court[s] of appeals cases" have held that a redaction analysis is the proper test for affidavits containing tainted information).

Murray uses two similar yet seemingly incompatible formulations of the first prong: whether "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry," and, alternately, whether "the agents would have sought a warrant if they had not earlier entered the warehouse." Murray, 487 U.S. at 542-43. A superficial reading of the "prompted" test would require suppression if the officers' decision to seek the warrant was in fact prompted by what they saw during the prior illegal entry, regardless of whether they would have applied for the warrant had they not made that entry. The very principles that guide our analysis regarding the second prong guide our analysis regarding the first. The lodestar of both prongs is whether suppression would place the police in a worse position than they would be in had they not acquired the illegal information in the first instance. See Murray, 487 U.S. at 537; Nix, 467 U.S. at 443. A literal reading of the "prompted" test, just as a literal reading of Murray's second prong, could contravene this principle. In both cases, we reject such a reading in favor of an inquiry into the substantive effect of the illegal entry. As such, we conclude that the proper test under Murray's first prong is whether the police would have applied for the warrant had they not made the prior illegal observations.

The conclusion in Khabeer, where we remanded to the district court to determine in the first instance whether the officers' decision to seek a search warrant was prompted by one of the officer's observations during an earlier illegal entry, does not change our analysis. See United States v. Khabeer, 410 F.3d 477, 484 (8th Cir. 2005). We remanded that case because the district court had not made a finding one

way or the other about whether the police would have sought a warrant absent the illegally-obtained information. Id. at 483 (relying on Murray's admonition that "it is the function of the District Court rather than the Court of Appeals to determine the facts" in making a limited remand). While we observed that the first Murray prong would have been satisfied if the officer seeking the warrant did not know what the officer who illegally entered had seen, a fact not clear from the record and important in the independent source determination, the opposite is not necessarily true. At most, Khabeer reinforces that the question of whether the officers would have sought a search warrant is a fact finding for the district court, one which we review deferentially on appeal.

## A. THE DECISION TO SEEK THE WARRANT

In its Supplement to Ruling on Defendant's Motion to Suppress, the district court found that absent the illegally obtained information the police "nevertheless would have been prompted to apply for the search warrant based on the other information that they had." (R. at 118.) This finding, in turn, relied on the district court's finding that, even without the illegal information, the police would have brought Carstens to identify the car behind Swope's residence. Swope contends that both of these findings, which we review for clear error, Khabeer, 410 F.3d at 481, lack substantial support.

The district court did not commit clear error in finding that the police would have brought Carstens to identify the vehicle behind Swope's residence regardless of the prior illegal entry and interrogation. Knudsen's sighting was an early and substantial lead. Indeed, the fact that Carstens noted neither a license plate number nor any identifying marks on the getaway vehicle (as Swope is quick to point out) actually bolsters the district court's finding that the police would have driven Carstens the fourteen-odd miles to Atlantic to identify the vehicle, since doing so was necessary to supplement his rather generic initial description. The district court's finding is not clearly erroneous.

-8-

Notwithstanding Swope's contention that the illegal observations piqued Lt. Parsons' interest and spurred the subsequent warrant application, the district court's finding that the officers would have sought a warrant without the illegally obtained information is supported by substantial evidence in the record. Carstens' description of the car and Knudsen's sighting of a car matching that description and driven by a sole male occupant wearing the same color of clothing worn by the robber immediately focused the investigation on Swope. The timing and location of the sighting were consistent with the time necessary to drive between Anita and Atlantic. Importantly, Carstens' identification of the car may be included among the facts used to evaluate the district court's finding on this prong of Murray. The statements from Carstens and Knudsen, taken together, strongly implicated Swope. The sighting and the timing must have seemed much more than mere coincidence. The tracks leading to the Oldsmobile showed that it had been driven recently, and the door left open to the residence indicated the urgent and hasty movements consistent with criminal activity. Moreover, on that morning the police both found a .40 caliber shell casing at the bank and learned that Swope had carried a gun of the same caliber while on duty with the Corning Police Department. Finally, Carstens' identification of the car behind Swope's residence as matching the getaway vehicle strongly supports the district court's finding. The district court's ultimate finding of fact – that the officers would have applied for the warrant regardless of the illegal entry – is not clearly erroneous. As such, the independent source doctrine's first requirement is met.

## B. PROBABLE CAUSE

The final issue is whether the redacted application supports probable cause. We review the district court's determination of probable cause *de novo*. United States v. Hudspeth, 525 F.3d 667, 674 (8th Cir. 2008). To support probable cause, the redacted application "must describe circumstances showing that, based on practical experience and common sense, there is a fair probability that contraband or similar evidence will

-9-

be found in the targeted place." United States v. Nguyen, 526 F.3d 1129, 1133 (8th Cir. 2008). Application affidavits are considered under the totality of the circumstances, Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998), and "should be read with common sense and not in a grudging, hyper technical fashion," United States v. Goodson, 165 F.3d 610, 613 (8th Cir.), cert. denied, 527 U.S. 1030 (1999) (internal marks omitted). Both circumstantial evidence, United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), and inferences, United States v. Jones, No. 07-2918, 2008 WL 2906538, at *3 (8th Cir. 2008), may support probable cause.

Although much of the application was tainted and, therefore, not relevant to this analysis, the untainted portions nevertheless are sufficient to support a finding of probable cause. As the district court observed after taking judicial notice of Anita and Atlantic's small-town rural-county character, "Knudsen's observation of the vehicle and Carstens' identification of it carry considerable weight." (R. at 78.) We agree. Carstens' identification of the car behind Swope's house as matching the escape vehicle is of obvious and critical importance. Further, the redacted affidavits show that Knudsen spotted the car at 8:10 a.m. and that employees were present during the robbery. As such, the affidavits suggest a short time lapse between the robbery and Knudsen's sighting, which generally coincides with the amount of time needed to drive between the two towns. When observed by Knudsen, Swope was headed west, going away from Anita, not towards it. Further, Lt. Parsons' affidavit states that the back door to the residence was ajar, indicating recent activity. Taken together, the redacted affidavits paint a picture of a lone male who robbed the bank using a .40 caliber handgun, who within minutes drove a car, identified by the bank official as exactly like the one the robber used to get away, directly to Swope's residence going inside without closing the door, and Swope was known to carry a .40 caliber handgun when previously employed as a law officer. These circumstances show "a fair probability that contraband or similar evidence will be found in the targeted place." Nguyen, 526 F.3d at 1133. As the redacted application demonstrates probable cause, Murray's second prong is satisfied.

## IV. SUMMARY

For the foregoing reasons, we conclude that the warrant is an independent source for the physical evidence. Accordingly, we affirm the judgment of the district court.

_____