# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2729

_____

| | | |
|---|---|---|
| Kenith Chesney, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| United States of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 16, 2004

Filed: May 21, 2004

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
Judges.

_____

COLLOTON, Circuit Judge.

Kenith Chesney appeals the district court's[1] denial of his motion to vacate his
sentence, filed pursuant to 28 U.S.C. § 2255. The district court held that Chesney
made a knowing and voluntary waiver of his right to file such a motion, and thus
dismissed the case. Although circuit precedent requires us to evaluate Chesney's

_____

[1]The Honorable Susan Webber Wright, Chief Judge, United States District
Court for the Eastern District of Arkansas.

claim of ineffective assistance of counsel on the merits, we ultimately conclude that Chesney's waiver was knowing and voluntary. Accordingly, we affirm.

## I.

Chesney was convicted by a jury on one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to sentencing, Chesney entered into a stipulation with the government, wherein he agreed to waive the right to appeal his conviction and sentence, along with "any and all post sentencing pleadings." In exchange, the government agreed to advocate a total offense level of 36 under the United States Sentencing Guidelines, which resulted in a sentencing range of 188 to 235 months. The government also agreed to recommend a sentence at the low end of that range. During the sentencing hearing, the district court noted that under the stipulation, Chesney waived the right to appeal his conviction and sentence, and Chesney's counsel expressed agreement. The district court accepted the stipulated offense level, and sentenced Chesney to 188 months imprisonment.

Chesney subsequently moved to vacate his sentence under 28 U.S.C. § 2255, claiming that he was denied effective assistance of counsel, and that the district court failed adequately to inform Chesney of the ramifications of his waiver. Chesney argued that his trial counsel erred both in failing to communicate a pre-trial offer of a plea agreement that would have carried a maximum punishment of 60 months imprisonment, and in failing to ensure that Chesney fully understood the consequences of the sentencing stipulation. The district court denied Chesney's motion, finding that he had knowingly and voluntarily waived his right to file "any and all post sentencing pleadings," including motions brought pursuant to 28 U.S.C. § 2255.

II.

On appeal, Chesney argues that the Due Process Clause required the district court to advise him of the specific rights that he would waive by agreeing to forego "any and all post sentencing pleadings." He asserts that in the absence of a colloquy comparable to that conducted under Federal Rule of Criminal Procedure 11 with respect to pleas of guilty, his purported waiver of the right to bring claims in a post-conviction motion was not "knowing and voluntary." As a result, he contends, the waiver should not be enforced.

Setting aside for a moment Chesney's claim of ineffective assistance of counsel, we reject Chesney's broad claim that the district court was required at the sentencing hearing to engage in a detailed colloquy regarding the potential rights and claims that he would forego by waiving his right to bring "any and all post sentencing pleadings." In *United States v. Michelson*, 141 F.3d 867, 871 (8th Cir. 1998), we rejected a similar claim from a defendant who argued that his waiver of a right to appeal was not knowing and voluntary because "the magistrate judge did not engage him in an explicit discussion regarding his waiver of appellate rights during the Rule 11 colloquy at his plea hearing." While we allowed that "it might have been preferable for the court to conduct a colloquy," we held that "such a dialogue is not a prerequisite for a valid waiver of the right to appeal." *Id.*

We see no reason why the rule should be different with respect to a waiver of the right to file a post-conviction motion, as opposed to a direct appeal. As a practical matter, we do not believe it would be possible for a district judge to develop a litany of every post-sentencing pleading that might occur to a defendant during a 15-year term of imprisonment, and Chesney provides no sound means to identify which potential pleadings or claims must be cited in his proposed colloquy. The stipulation signed by Chesney and his counsel, however, was explicit regarding his waiver of the right to file "*any and all* post sentencing pleadings." Simplicity has

-3-

virtue. Any reasonable person in Chesney's position should have understood the waiver to mean that the sentencing hearing would be final: the sentence imposed would be the sentence served. The court and Chesney's counsel acknowledged the stipulation orally at the hearing, and Chesney made no inquiry or comment about the waiver when he addressed the court. *See United States v. Washington*, 198 F.3d 721, 724 (8th Cir. 1999) ("A fundamental choice over which the defendant has the ultimate decision can be knowingly and voluntarily waived if, by his or her silence, the defendant apparently acquiesces to the waiver."). We believe that the explicit language of the written waiver, which was signed by Chesney, and the court's oral confirmation of the provision in Chesney's presence are sufficient to demonstrate that the waiver of the general right to file post-sentencing pleadings was knowing and voluntary.

Chesney's specific claim that his waiver was the result of ineffective assistance of counsel is more complicated. A panel of this court has held that "[a] defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel." *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000); *see also United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc). According to *DeRoo*, "'[j]ustice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself -- the very product of the alleged ineffectiveness.'" *DeRoo*, 223 F.3d at 924 (quoting *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999)). The *DeRoo* court thus held that the district court "should have addressed the substance of DeRoo's motion and determined whether the alleged ineffective assistance of counsel made DeRoo's waiver unknowing and involuntary." *Id.* at 924. In this case, Chesney argues that his trial counsel was ineffective in recommending the waiver of all post-sentencing pleadings, because (1) Chesney allegedly did not benefit from the sentencing stipulation in which the waiver was included, and (2) the

waiver precluded Chesney from attacking trial counsel's alleged ineffectiveness in failing to communicate a generous plea offer to Chesney prior to trial.

We are bound to follow *DeRoo* with respect to the waiver in this case, but we hesitate to read that decision broadly. The right to "effective assistance of counsel," after all, arises from the Sixth Amendment, and a criminal defendant may waive the rights guaranteed by the Sixth Amendment. *Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938). If a criminal defendant is able to negotiate substantial concessions from the prosecution, but only on the condition that the defendant waive a potential future claim of ineffective assistance of counsel, does "justice" really dictate that this court refuse to enforce such an agreement in all circumstances? If the government cannot obtain the benefit of avoiding collateral litigation under section 2255, then the government may not be willing to offer certain concessions, and a defendant may be unable to secure the bargain most favorable to his interests. To require that conclusion would seem, in Justice Frankfurter's famous words, "to imprison a man in his privileges and call it the Constitution." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 280 (1942).

Perhaps, therefore, *DeRoo* should be read only to impose the sort of procedural safeguards that Chesney seeks before a court may enforce a waiver of a claim of ineffective assistance of counsel that relates to the negotiation of the waiver. On that view, a general waiver of the right to bring post-conviction or post-sentencing claims under section 2255 would not be sufficient to waive such a claim of ineffective assistance of counsel, but an explicit waiver of the Sixth Amendment right to counsel -- which explained the concept of ineffective assistance of counsel and the basic ramifications of waiving a claim that ineffectiveness influenced the signing of the waiver -- would be considered knowing and voluntary. *Cf. Faretta v. California*, 422 U.S. 806, 835-36 (1975). Under the law of this circuit, so long as such a waiver of Sixth Amendment rights did not result in a "miscarriage of justice," *Andis*, 333 F.3d at 891-92, the waiver would be enforceable.

Even that refinement of *DeRoo*, however, would not permit us to affirm the district court's enforcement of the waiver in this case without considering the claim of ineffective assistance of counsel on the merits. Chesney's waiver did not specifically mention the Sixth Amendment or the right to effective assistance of counsel, and the colloquy with the court at the time of sentencing was no more specific than the general written waiver. In light of *DeRoo*, therefore, we conclude that Chesney did not waive the right to argue that his waiver of the right to file "any and all post sentencing pleadings" was the result of ineffective assistance of counsel, and thus not a "knowing and voluntary" waiver.

## III.

Despite the need for further inquiry, we need not remand the case to the district court if the record on appeal is sufficient to permit meaningful review of Chesney's claim of ineffective assistance of counsel. *DeRoo*, 223 F.3d at 924. We believe that the record in this case is adequate to the task.

The district court did consider and reject on the merits Chesney's allegation that trial counsel was ineffective because he failed to communicate an offer of a plea agreement under which Chesney's maximum punishment would have been five years imprisonment. The court noted that contrary to Chesney's assertion that he would have pleaded guilty under the proposed agreement, "Chesney took the stand in his defense and testified extensively that he was not guilty of the offense charged." Chesney now argues that his denial of guilt under oath at trial does not foreclose the possibility that he would have admitted guilt under oath at a guilty plea hearing if he had known about the favorable terms of the proposed plea agreement.[2]

---

[2]After the district court denied Chesney's motion to vacate his sentence, Chesney's trial counsel filed in the district court an "offer of proof in event of appeal." In this document, Chesney's trial counsel represented that he communicated the government's plea offers to Chesney on two occasions prior to trial, and that Chesney rejected the offers by stating that he was not guilty.

We are confident that the district court was aware of the theoretical possibility that a defendant might plead guilty under a set of favorable terms, but proceed to trial and deny guilt under oath if those favorable terms were not available. The question before the district court, however, was whether Chesney had made a sufficient showing of unprofessional conduct by trial counsel and resulting prejudice to warrant an evidentiary hearing. We note that Chesney presented no affidavit with his post-conviction motion, and even the motion to vacate does not assert directly that Chesney would have pleaded guilty in exchange for a sentence of five years imprisonment. We interpret the district court's ruling to mean that having personally observed Chesney's extensive trial testimony, in which he adamantly denied guilt, the court did not believe that Chesney would have pleaded guilty under the government's pre-trial offer, even assuming he won the inevitable swearing contest with his trial counsel about whether the plea offer was communicated. We find no error in the district court's conclusion. *See Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003); *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

We also conclude that the record is sufficient to demonstrate that counsel was not ineffective in recommending the sentencing stipulation. Chesney received at least three benefits from the stipulation. First, the government agreed to a base offense level of 36, despite sufficient evidence of drug quantity in the trial record to support a good faith argument that the base offense level should have been 38. *See* USSG § 2D1.1(c). (Indeed, counsel for the United States represented that the probation office initially recommended a base offense level of 38 in its draft presentence report). Although the district court ultimately stated that it agreed with the stipulated level of 36 based on the quantity of drugs, this comment does not eliminate the possibility that after an adversarial presentation, the court might have been persuaded to arrive at the higher offense level. The stipulation avoided that risk, and the decision to recommend a certain outcome in the face of such risk is well within the range of competence demanded of attorneys in criminal cases. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

-7-

Second, the stipulation avoided a two-level specific offense characteristic for possession of a dangerous weapon. *See* USSG § 2D1.1(b)(1). One of Chesney's co-conspirators testified at trial that Chesney admitted possessing a firearm during a drug transaction. If credited, this testimony would have supported a two-level adjustment. (Again, counsel for the United States represented that the probation office initially recommended this adjustment). In the stipulation negotiated by Chesney's counsel, however, the government agreed not to seek the enhancement. The agreement thus eliminated the risk of a finding that could have increased Chesney's sentence by approximately four years.

Third, the stipulation avoided a two-level adjustment for obstruction of justice based upon Chesney's testimony at trial. *See* USSG § 3C1.1, comment. (n.4(b)). Despite overwhelming evidence of his participation in the charged drug conspiracy, Chesney denied under oath that he committed the offense. In light of that record, it is surprising that an adjustment for obstruction of justice was not at least a subject of discussion in the presentence report or at the sentencing hearing. In any event, Chesney's counsel negotiated a stipulation that avoided the risk that he would receive a two-level enhancement for perjury at trial, and that result is further evidence of counsel's effectiveness.

We conclude that Chesney has not established that his waiver of the right to file "any and all post sentencing pleadings" was the product of ineffective assistance of counsel. Accordingly, we agree with the district court that the waiver was knowing and voluntary, and we affirm the judgment of the district court.

_____