# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1547

_____

| | | |
|---|---|---|
| Charles Samuel Watson, Jr., | * | |
| | * | |
| Petitioner - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| United States of America, | * | |
| | * | |
| Respondent - Appellee. | * | |

_____

Submitted: January 13, 2012
Filed: June 26, 2012

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Pursuant to 28 U.S.C. § 2255, Charles Watson, Jr., filed a motion to vacate the 165-month sentence he received after he pleaded guilty to a drug conspiracy charge. The district court[1] summarily denied the motion because Watson waived the right to bring a § 2255 motion in his plea agreement. We granted a certificate of appealability on the issue of whether the waiver was enforceable to the extent Watson claimed ineffective assistance of counsel in matters directly related to his plea agreement. We now affirm.

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

I

On October 5, 2008, Watson delivered heroin to Joseph Vanhoe in Iowa City, Iowa. Within a few hours, Vanhoe was found dead in his apartment. Vanhoe had a fresh needle mark in his arm. Police found two hypodermic needles with liquid inside them near Vanhoe's body, along with several baggie corners containing heroin residue. An autopsy concluded Vanhoe died from ethanol and heroin poisoning.

A federal grand jury indicted Watson with: (1) conspiring to distribute cocaine base and heroin resulting in death in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846; (2) distribution of heroin resulting in death in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Watson pleaded guilty to the conspiracy count pursuant to a written plea agreement. The conspiracy count carried a mandatory minimum sentence of 240 months due to the allegation that death resulted from the distribution of the controlled substances involved in the conspiracy. See 21 U.S.C. § 841(b)(1)(C) (mandating "a term of imprisonment of not less than twenty years" for cases involving schedule I or II controlled substances "if death or serious bodily injury results from the use of such substance").

In the plea agreement, Watson waived the right to file a direct appeal of his sentence. He also waived the right to collaterally attack his sentence. The relevant provision in the plea agreement stated:

> *Waiver of Right to Collateral Attack.* The defendant also understands that he has a right to attack his conviction, and/or the sentence imposed, collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that the defendant received ineffective assistance from his attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence were otherwise subject to collateral attack. The defendant understands that

-2-

such an attack is usually brought through a motion pursuant to 28 U.S.C. § 2255. The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands applicable rights under the statute. The defendant's attorney has fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant. Understanding those rights, and having thoroughly discussed those rights with his attorney, the defendant knowingly and voluntarily waives the right to collaterally attack his conviction and/or sentence. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of his counsel was made by him alone notwithstanding any advice he may or may not have received from his attorney regarding that right. Regardless of any advice the defendant's attorney may have given him, in exchange for the concessions made by the United States in this Agreement, the defendant hereby knowingly and voluntarily waives the right to collaterally attack the conviction and/or sentence. The rights waived by the defendant include the right to challenge the amount of any fine or restitution in any collateral attack including, but not limited to, a motion brought under Section 2255.

Plea Agreement at ¶ 14.

During Watson's plea hearing, the district court discussed the collateral attack waiver with Watson. The following colloquy took place:

THE COURT: People who get done appealing, going as far as they can go, ordinarily have a right for a period of one year to bring a limited attack on their conviction. Sometimes it is called post conviction relief, sometimes it is referred to by the criminal code Section 2255 that it is filed under usually in Federal Court. I see in Paragraph 14 of the Plea Agreement that you have given up that as well. In the Plea Agreement it says that you understand that you have that right, that you and your lawyer have discussed that right, and that understanding the right to bring that limited attack, you knowingly and voluntarily waive or give up the right to collaterally attack your conviction or sentence. Oftentimes this right is used to bring a claim that your lawyer rendered

-3-

ineffective assistance of counsel, that your lawyer just wasn't up to the task or left something out or did something wrong along the way. Here in the Plea Agreement it says, "The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of ineffective assistance of his counsel was made by him alone, notwithstanding any advice he may or may not have received from his attorney regarding that right." ***So you don't get to bring a claim later that Mr. Ingram was ineffective in recommending this plea agreement.*** Do you understand that?

THE DEFENDANT: Yes, sir.

Plea Tr. at 15-16 (emphasis added).

The district court later sentenced Watson to 165 months of imprisonment, departing below the 240-month mandatory minimum after granting the government's motion for a substantial assistance departure under 18 U.S.C. § 3553(e). The other two counts against Watson were dismissed pursuant to the plea agreement.

Within a year after being sentenced, Watson filed a motion to vacate his sentence under 28 U.S.C. § 2255. The motion alleged four grounds for setting aside the conviction and sentence: (1) the sentence was illegal because it was based upon a finding Watson was responsible for fifty grams or more of cocaine base even though the presentence report (PSR) only attributed 1.6 grams of cocaine base directly to Watson; (2) the sentence was illegal due to the enhancement based on Joseph Vanhoe's death; (3) the receipt of improper advice from his attorney with regard to entering into the cooperation agreement with the government; and (4) ineffective assistance of counsel, including ineffective advice Watson received regarding the plea agreement itself.

The district court denied the section 2255 motion without an evidentiary hearing, enforcing the collateral attack waiver in Watson's plea agreement. The

district court also later denied Watson's request for a certificate of appealability. Watson renewed his request for a certificate of appealability in our court. We granted Watson's request in part, limiting it "to the question whether the district court correctly enforced Watson's waiver of his right to attack his conviction and sentence in a proceeding under 28 U.S.C. § 2255 based on ineffective assistance of counsel." This appeal followed.

## II

We review issues related to plea agreements de novo, including the interpretation of a waiver of appellate rights or a waiver of the right to collaterally attack a sentence and conviction. See United States v. Lovelace, 565 F.3d 1080, 1084 (8th Cir. 2009).

Citing DeRoo v. United States, 223 F.3d 919 (8th Cir. 2000), Watson argues the district court erred in enforcing the collateral attack waiver in his plea agreement because he alleged in his section 2255 motion that the guilty plea itself was tainted by ineffective assistance of counsel in violation of his Sixth Amendment rights. In DeRoo, we stated the "[d]ismissal of a section 2255 motion on the basis of a waiver in the plea agreement is inappropriate when the defendant's claims of ineffective assistance relate to the negotiation of, and entry into, the plea agreement and waiver." 223 F.3d at 924. We determined a "decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside 'the range of competence demanded of attorneys in criminal cases.'" Id. at 923-24 (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985)). Thus, "justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself – the very product of the alleged ineffectiveness." Id. at 924 (quoting Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999)).

Our court subsequently noted the tension between a broad reading of DeRoo and the Supreme Court's long recognition of a defendant's ability to waive rights guaranteed by the Sixth Amendment, including the right to effective assistance of counsel. See Chesney v. United States, 367 F.3d 1055, 1058 (8th Cir. 2004) (citing Johnson v. Zerbst, 304 U.S. 458, 468-69 (1938)). In Chesney, we explained:

> If a criminal defendant is able to negotiate substantial concessions from the prosecution, but only on the condition that the defendant waive a potential future claim of ineffective assistance of counsel, does "justice" really dictate that this court refuse to enforce such an agreement in all circumstances? If the government cannot obtain the benefit of avoiding collateral litigation under section 2255, then the government may not be willing to offer certain concessions, and a defendant may be unable to secure the bargain most favorable to his interests. To require that conclusion would seem, in Justice Frankfurter's famous words, "to imprison a man in his privileges and call it the Constitution." Adams v. United States ex rel. McCann, 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

Id. at 1058-59.

Chesney suggested that perhaps DeRoo should be refined to stand for the following proposition:

> [A] general waiver of the right to bring post-conviction or post-sentencing claims under section 2255 would not be sufficient to waive such a claim of ineffective assistance of counsel, but an explicit waiver of the Sixth Amendment right to counsel – which explained the concept of ineffective assistance of counsel and the basic ramifications of waiving a claim that ineffectiveness influenced the signing of the waiver – would be considered knowing and voluntary. Cf. Faretta v. California, 422 U.S. 806, 835-36, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Under the law of this circuit, so long as such a waiver of Sixth

Amendment rights did not result in a "miscarriage of justice," Andis, 333 F.3d at 891-92, the waiver would be enforceable.

Id. at 1059.

Chesney ultimately did not adopt such a refinement of DeRoo because "Chesney's waiver did not specifically mention the Sixth Amendment or the right to effective assistance of counsel, and the colloquy with the court at the time of sentencing was no more specific than the general written waiver." Id. The government nonetheless urges us to adopt Chesney's dicta as a holding in this case because the collateral attack provision in Watson's plea agreement explicitly referred to the right to bring a claim for ineffective assistance of counsel, and the district court specifically discussed the waiver with Watson during the plea colloquy.

We are not inclined to decide whether to adopt Chesney's refinement of DeRoo in this particular case, however, because the parties failed to address an issue we find difficult to ignore in determining whether Watson knowingly and voluntarily waived his right to bring an ineffective assistance claim with respect to matters directly related to the plea agreement. Ethics opinions from various states have addressed whether a defendant's attorney labors under a conflict of interest when advising a client to waive an ineffective assistance of counsel claim, with conflicting results.[2]

_____

[2]Compare Prof'l Ethics Comm. for the State Bar of Tex. Op. No. 571 (2006) (concluding a defense lawyer who has "no cause for any reasonable concern as to his effectiveness in representing the defendant" would not have a conflict of interest in advising a client to waive an ineffective assistance claim), and Ariz. State Bar Comm. on the Rules of Prof'l Conduct Op. 95-08 (1995) (concluding a defense lawyer may advise a client to waive an ineffective assistance claim because "[t]here is a significant difference between a defendant's claim that a court should revisit his sentence because of ineffective assistance of counsel and a defendant's claim against his lawyer [for malpractice]"), with Ala. State Bar Formal Ethics Op. RO 2011-02 (2011) (concluding "a conflict of interest exists where a lawyer must counsel his client on whether to waive any right to pursue an ineffective assistance of counsel

-7-

Watson does not claim his counsel labored under a conflict of interest when advising him to enter the plea agreement, and the parties did not brief this issue. We therefore believe it prudent to forego the issue of whether <u>DeRoo</u> should be refined by <u>Chesney</u>'s suggestions until this related issue on a potential conflict of interest is fully aired by the adversarial process.

Instead, we accept the government's invitation to determine whether the district court should be affirmed in any event because Watson's ineffective assistance claim fails on the merits. <u>See</u> <u>United States v. Castellanos</u>, 608 F.3d 1010, 1015 (8th Cir. 2010) (noting waiver is a prudential rather than a jurisdictional concept and does not bar appellate review). In order to satisfy the prejudice prong of the <u>Strickland</u>[3] test in the guilty plea context, a defendant must establish a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness. <u>Hill</u>, 474 U.S. at 59. On appeal, Watson never directly contends he would not have pleaded guilty and would have insisted on going to trial but for his counsel's alleged deficiencies. Instead, he claims he can show prejudice because his section 2255 motion challenges "the aspects of his conviction which led to his 20 year mandatory minimum sentence – the allegations that he was involved in a conspiracy to distribute more than 50 grams of cocaine, and that his involvement in the alleged distribution of heroin led to the death of Joseph Vanhoe."

---

claim against himself"), Nev. Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. No. 48 (2011) (same), Va. State Bar Legal Ethics Op. No. 1857 (2011) (same), and Advisory Comm. of the Sup. Ct. of Mo. Formal Op. 126 (2009) (same); <u>see also</u> Bd. of Comm'rs on Grievances & Discipline of the Sup. Ct. of Ohio Op. 2001-6 (2001) (concluding a lawyer's advice to enter a plea agreement that waives an ineffective assistance claim is an unethical attempt to limit liability for personal malpractice); Vt. Bar Ass'n Comm. on Prof'l Responsibility, Advisory Ethics Op. 95-04 (1995) (same).

[3] <u>Strickland v. Washington</u>, 466 U.S. 668, 687-94 (1984) (setting forth the two-part standard for evaluating claims of ineffective assistance of counsel).

Watson's contention that he faced a mandatory minimum sentence of 240 months because the conspiracy involved fifty grams or more of cocaine base is incorrect. As we stated above, Watson faced a mandatory minimum sentence of 240 months because the conspiracy involved a death resulting from the distribution of heroin. Thus, Watson's admission that the conspiracy involved fifty grams or more of cocaine had no bearing on the mandatory minimum sentence he faced. As a result, he cannot establish any prejudice due to any advice he may have received from his counsel in that regard.

With respect to Watson's second contention—that his counsel failed to investigate Watson's involvement in Vanhoe's death—the record establishes "Watson admitted he delivered heroin to Vanhoe on the day of Vanhoe's death[.]" PSR at ¶ 24. The autopsy report indicated Vanhoe died from heroin poisoning. In addition, one of Watson's codefendants, Reginald Penro, was shown the heroin seized from Vanhoe's residence and "stated it appeared to be the same substance he and Watson delivered to Vanhoe on the day of Vanhoe's death." Id. at ¶ 21. Watson fails to address the strength of this evidence or otherwise explain how his trial counsel was ineffective in failing to further investigate whether Watson's conduct resulted in Vanhoe's death. We therefore conclude that Watson cannot establish he was prejudiced by his counsel's alleged ineffective assistance, and thus the district court did not abuse its discretion in denying the relief Watson requested without holding an evidentiary hearing.

III

We affirm the district court.

_____